1

THE HONORABLE MARSHA J. PECHMAN

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

10

11

THEODORE C. SWARTZ,

NO. C03-1252P

12

Plaintiff,

13

v.

SECOND AMENDED COMPLAINT

14

FOR PROFESSIONAL NEGLIGENCE;

BREACH OF FIDUCIARY DUTY AND

15

KPMG, LLP; SIDLEY AUSTIN BROWN

CONSPIRACY

& WOOD, LLP; DALE R. BAUMANN;

16

R. J. RUBLE, and their respective marital

communities, if any,

17

18

Defendants.

19

Plaintiff Theodore C. Swartz files the foregoing Second Amended

20

Complaint to reflect the claims remaining against the above defendants, following the

21

Court's ruling on Motions to Dismiss and Motions for Leave to Amend.

22

**JURISDICTION AND VENUE**

23

1.     This is an action for damages arising in part out of defendants'

24

breach of fiduciary duty, professional negligence, and conspiracy.

25

26

SECOND AMENDED COMPLAINT – 1
U.S.D.C. C03-1252P

2.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because the claims raised a question of federal law; and pursuant to 28 U.S.C. § 1367 because the remaining state law claims are so related to the RICO claim that they form part of the same case or controversy.

3.      Venue is proper in this District pursuant to 28 U.S.C. § 1965(a) because the defendants are all found, reside and/or transact affairs in this District; pursuant to 18 U.S.C. § 1965(b) because the ends of justice require that the parties residing in any other district be brought before this Court; pursuant to 28 U.S.C. § 1291(b) because a substantial part of the events or omissions giving rise to this action occurred in this District; and/or pursuant to 28 U.S.C. § 1391(b) because one or more of the defendants is found in and is subject to personal jurisdiction in this District.

**PARTIES**

4.      Plaintiff Theodore Swartz ("Swartz") is a United States citizen who resides in Seattle, King County, Washington 98101.

5.      Defendant KPMG is an international accounting and consulting firm known as one of the "Big Four" accounting firms in the United States. KPMG is organized in Delaware and maintains its headquarters in New York. KPMG does business on a routine basis in, and may be found in, the U.S. Western District of Washington and is subject to the general jurisdiction of this Court. KPMG acted as promoter of the improper transaction (known as a "BLIPS" transaction) that forms the basis for the claims alleged herein.

6.      Defendant Dale R. Baumann ("Baumann") is a partner of KPMG, in its Mountain View, California office, and is a federally authorized tax practitioner. Defendant Baumann was, at all relevant times, a citizen of California and is a certified public accountant licensed by the State of California. Baumann acted as a promoter of the BLIPS transaction and in so doing Baumann directed communications into the U.S.

SECOND AMENDED COMPLAINT – 2
U.S.D.C. C03-1252P

SIRIANNI YOUTZ
MEIER & SPOONEMORE
719 SECOND AVENUE, SUITE 1100
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303   FAX (206) 223-0246

Western District of Washington and otherwise conducted business therein sufficient to establish minimum contacts within the forum that support the exercise of jurisdiction over his person by this Court. Baumann's contacts included, without limitation, the following:

- A letter from KPMG (Baumann) dated 9/1/99 to Swartz in Seattle, Washington regarding engagement of KPMG for tax consulting services.

- Facsimile communication from KPMG (Baumann) dated 12/17/99 to Lincoln Miller (Swartz's personal financial manager) in Seattle, Washington transmitting information.

- Email communication from KPMG (Baumann) dated 12/21/99 to Miller in Seattle, Washington regarding estimated basis calculation.

- Email communication from KPMG (Baumann) dated 3/27/00 to Miller in Seattle, Washington regarding preparation of basis calculation for Swartz.

- Facsimile communication from KPMG (Baumann) dated 3/30/00 to Miller in Seattle, Washington regarding contacting them for questions.

- Email communication from KPMG (Baumann) dated 3/30/00 to Miller in Seattle, Washington regarding preparation of basis calculation for Presidio investment.

- A letter from KPMG (Baumann) dated 10/16/00 to Swartz in Seattle, Washington regarding reaffirming the more-than-likely-than-not tax opinion from KPMG.

- Email communication from KPMG (Baumann) dated 10/24/00 to Miller in Seattle, Washington regarding closing out Deutsche Bank account.

Collectively, Baumann and KPMG are referred to herein as the "KPMG Defendants."

7.    Defendant Sidley Austin Brown & Wood LLP is one of the nation's largest law firms, with over 1,400 attorneys and offices in New York, New York; Los Angeles and San Francisco, California; Chicago, Illinois; Dallas, Texas; Washington,

SECOND AMENDED COMPLAINT – 3
U.S.D.C. C03-1252P

D.C.; and London, England. The law firm has a registered agent in the State of Washington located in Seattle, Washington. Sidley Austin Brown & Wood is a limited liability partnership organized in Delaware and is the successor in interest to Brown & Wood, the law firm that advised Swartz, and thus it is referred to herein as "Brown & Wood." Brown & Wood at all relevant times directed communication into the U.S. Western District of Washington and otherwise conducted business therein sufficient to establish minimum contacts within the forum that support the exercise of jurisdiction over its persons by this Court including but without limitation mailing to the plaintiff and/or his affiliate a legal opinion letter dated December 31, 2000.

8.  Defendant R. J. Ruble ("Ruble") is an attorney licensed to practice law in the State of New York, was, at all relevant times, a partner in Sidley Austin Brown & Wood's New York office, was a member of Sidley Austin Brown & Wood LLP's Executive Committee, and was, at all relevant times, a citizen of New York. Ruble directed communication into the U.S. Western District of Washington and otherwise conducted business therein sufficient to establish minimum contacts within the forum that support the exercise of jurisdiction over his persons by this Court, including without limitation mailing to the plaintiff and/or his affiliate a legal opinion letter dated December 31, 2000.

9.  Collectively, Brown & Wood and Ruble are referred to herein as the "Brown & Wood Defendants."

10.  On information and belief, the defendants engaged in a large number of BLIPS transactions and similarly improper transactions and, in doing so, acted in concert according to a prearranged and commonly understood and accepted plan or scheme. In so doing, the defendants were acting mutually and as the agents of one another.

SECOND AMENDED COMPLAINT – 4
U.S.D.C. C03-1252P

SIRIANNI YOUTZ
MEIER & SPOONEMORE
719 SECOND AVENUE, SUITE 1100
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246

## SUMMARY OF FACTS AND CLAIMS

11.    In 1999, Swartz realized substantial capital gains of about $18 million from the sale of his business on which he fully expected to pay federal taxes.  Swartz took no affirmative steps to find ways to shelter these extraordinary capital gains from taxation.  KPMG used its prior knowledge of Swartz's finances and approached Swartz, telling him that KPMG had on its shelf a strategy to reduce or eliminate his taxes.  This advice by KPMG and some of the other Defendants has proved disastrous for Swartz, who paid millions of dollars to its professional advisers only to receive erroneous and incompetent advice that has exposed Swartz to audits by the IRS and substantial tax liability, including interest and penalties, and prevented Swartz from availing himself of legitimate tax savings opportunities.

12.    KPMG lured Swartz into the scheme (a) promising him that he would not have to pay capital gains tax on the over $18-million profit he had realized as a result of the sale of his business and (b) promising him that he would procure, through pre-arrangement, an "opinion letter" attesting to the legitimacy of BLIPS from Brown & Wood.  Swartz paid these Defendants hundreds of thousands of dollars, and on information and belief, these Defendants reaped millions of dollars in fees from other clients Defendants enticed into the scheme, which they knew or should have known to be an illegitimate tax sham.

13.    The objective of a BLIPS transaction is to "create" a paper capital loss to offset a real capital gain according to the following process that is prearranged by KPMG.  First, KPMG arranges a foreign bank line of credit for its customers who enter into the BLIPS transaction.  The line of credit consists of (i) a secured portion and (ii) a premium which enables the borrower to borrow additional amounts which are unsecured but subject to the bank's strict collateral and pledge requirements.  This line of credit is contributed or assigned to a new Limited Liability Company.  After the

SIRIANNI YOUTZ
MEIER & SPOONEMORE
719 SECOND AVENUE, SUITE 1100
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246

credit facility is assigned to the new LLC, the new LLC is then dissolved and a prearranged number of securities are distributed with a tax opinion that alleges that the securities have a basis equal to any capital contributed to the new LLC and the premium.  As will be explained below, a short term capital loss is triggered by selling the shares.  By varying the amount of the line of credit and the timing of the dissolution of the new LLC, the promoters claimed to be able to vary the timing and the amount of the capital loss.

14.    While the defendants were promoting and implementing the BLIPS transaction, the Internal Revenue Service ("IRS") announced in Notice 99-59, 1992-2 C.B. 761, 999 IRB LEXIS 424; 1999-52 I.R.B. 761 (December 27, 1999) that "losses" resulting from BLIPS transactions would not be allowed.

15.    Defendants either knew or should have known from the outset that their BLIPS tax shelter would not pass muster with the IRS.

16.    On information and belief, after an investigation by the IRS into other tax improprieties by KPMG, the IRS began to investigate BLIPS and similarly improper tax shelter schemes.  The IRS issued administrative summonses to KPMG, who informed the clients it had lured into the scheme of its receipt of those summonses.  The scope and breath of defendants' improper schemes, which include Defendants' malpractice and misfeasance upon Swartz, is indicated in *United States v. KPMG LLP*, Docket No. 2003-358, Misc. No. 02-0295 (D.D.C. Dec. 20, 2002); *see* Magistrate Judge Kay's Memorandum of Opinion of September 30, 2002.

> As part of an Internal Revenue Service ("IRS") examination of KPMG's promotion of and participation in transactions that the IRS contends are tax shelters, the IRS served a total of twenty-five administrative summonses on KPMG seeking information and materials relevant to the investigation. On January 28, 2002, the IRS issued a summons requesting information relating to two types of transactions, known as

SIRIANNI YOUTZ
MEIER & SPOONEMORE
719 SECOND AVENUE, SUITE 1100
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246

the Foreign Leveraged Investment Program ("FLIP") and the Offshore Portfolio Investment Strategy ("OPIS"). This summons is referred to as the "FLIP/OPIS Summons." *See Petition to Enforce Internal Revenue Service Summons ("Pet. To Enf. ") at* 2-3. On March 19, 2002, the IRS issued six additional summonses to KPMG. These summonses are also referred to by the transactions to which they are directed, as the "BLIPS/TRACT/IDV Summons," the "401(k) ACCEL Summons," the "§ 6111(c) Summons," the "§ 6111(d) Summons," the "Foreign Transactions Summons," and the "MIDCO Summons." *Id* at 4-6. On May 3, 2002, the IRS issued two more summonses to KPMG the "Tax Treaty Summons" and the "FOCUS Summons." *Id.* at 6-7.

17.    KPMG, one of the world's largest accounting and financial consulting firms, gained Swartz's trust by acting as his tax advisor. KPMG exploited their knowledge and their position as a trusted fiduciary by making an aggressive sales pitch to Swartz, advising him that he could greatly reduce or eliminate the income tax liability that would otherwise result from the sale of his business.

18.    As stated in more detail below, KPMG, in a scheme with Brown & Wood and the other defendants, abused their position of trust by collecting millions of dollars of fees for putting into effect the BLIPS transaction that all of the Defendants knew or should have known was a sham.  Nevertheless, both KPMG and Brown & Wood provided Swartz with lengthy and detailed opinion letters (the "Opinion Letters") confirming the "propriety" of the BLIPS scheme, in exchange for a large fee. The Opinion Letters were issued after, and wrongfully misrepresented the effect of, Notice 99-59, 1992-2 C.B. 761, 999 IRB LEXIS 424; 1999-52 I.R.B. 761 (December 27,1999) in which the Internal Revenue Service and Treasury Department announced that it had become aware of certain types of transactions that were being marketed to taxpayers for the purpose of generating tax losses.  In issuing the notices, the IRS sought to alert

SIRIANNI YOUTZ
MEIER & SPOONEMORE
719 SECOND AVENUE, SUITE 1100
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303    FAX (206) 223-0246

taxpayers and their representatives that the purported losses arising from such transactions would not be allowable for federal income tax purposes.

19.    On September 5, 2000, the Internal Revenue Service issued Notice 2000-44 which specifically described the "BLIPS/TRACT/IDV" transaction and stated that the promoters might be guilty of a criminal offense under Sections 7201, 7203, 7206, or 7212(a) of the Internal Revenue Code or other provisions of federal law. Specifically, with respect to such liability, the Notice stated:

> In addition, the Service and the Treasury have learned that certain persons who have promoted participation in transactions described in this notice have encouraged individual taxpayers to participate in such transactions in a manner designed to avoid the reporting of large capital gains from unrelated transactions on their individual income tax returns (Form 1040). Certain promoters have recommended that taxpayers participate in these transactions . . . the Service and the Treasury understand that these promoters have advised that the capital gains and losses from these transactions may be netted, so that only a small net capital gain or loss is reported on the taxpayer's individual income tax return. In addition to other penalties, any person who willfully conceals the amount of capital gains and losses in this manner, or who willfully counsels or advises such concealment, may be guilty of a criminal offense under §§ 7201, 7203, 7206, or 7212(a) or other provisions of federal law.

**DETAILS OF SWARTZ'S TRANSACTION AND DEFENDANTS' MISCONDUCT**

**KPMG Learned of Swartz's Potential Tax Liability**

20.    Swartz was a founder and executive of TCS Expeditions, Inc., which was in the business of operating educational travel programs.  In 1999, Swartz sold his shares in his company to Operating Educational Travel Programs, Inc., which acquired all of the outstanding shares in his company.  Swartz faced a possible capital gain of over $18 million on his stock sale which would have been reported as such on

SECOND AMENDED COMPLAINT – 8
U.S.D.C. C03-1252P

his 1999 federal income tax return.  Although Swartz has been successful as a businessman, he is unsophisticated in tax matters and has always relied upon professional representation in determining his tax obligations.

21.    In 1999, Swartz maintained a personal banking relationship with Commerce Bank of Washington ("Commerce Bank").  The proceeds of Swartz's stock sale were deposited in his account with Commerce Bank.  Swartz had a brokerage account with Merrill Lynch.  Swartz's Merrill Lynch account representative was aware of the sale of Swartz's company and of the potential large capital gain that Swartz might have to recognize on his federal income tax return.

22.    The Merrill Lynch account representative referred Swartz to a former Merrill Lynch employee, then a KPMG employee, for tax planning and related professional services.  KPMG first contacted Swartz in August 1999.  Swartz dealt most extensively with Mr. Dale Baumann, a Partner in KPMG's Mountain View, California office.

**KPMG Defendants Marketed BLIPS To Swartz**

23.    The malpractice and misfeasance perpetrated against Mr. Swartz by Defendants was a part of Defendants' broader conspiracy to defraud individuals and the United States government through the promotion, sale, and implementation of illegal tax shelter schemes.  Shortly after the sale of his business on July 12, 1999, Swartz was approached by Dale Baumann of KPMG, who informed him that KPMG had developed a strategy through which Swartz could legally shield from tax liability his substantial capital gain in 1999 resulting from the sale of the business.  Baumann informed Swartz that KPMG, together with Brown & Wood, had developed a strategy for a "select audience" of individuals who had sold large businesses or otherwise incurred large capital gains.  According to Baumann, these individuals could take advantage of a legal "loophole" in the tax law to shield all or most of their capital gains

SECOND AMENDED COMPLAINT – 9
U.S.D.C. C03-1252P

1   from taxation.  This strategy as described below was referred to by KPMG as the BLIPS

2   transaction.

3          24.     Before revealing any aspect of the BLIPS strategy to Swartz, KPMG

4   and Baumann required Swartz to sign a nondisclosure agreement forbidding Swartz

5   from disclosing the strategy to any person.

6          25.     On August 3, 1999, Swartz signed written engagement letters and

7   nondisclosure agreements provided to him by KPMG and retained KPMG as his

8   accountants and tax advisers with respect to the BLIPS transactions.  Subsequently,

9   KPMG and Baumann were engaged to provide Swartz tax advice and accounting

10  services.

11         26.     On August 3, 1999, the KPMG Defendants informed Swartz that

12  by forming a partnership to engage in a foreign currency options transaction, it was

13  possible to "create" a large capital loss for tax purposes that would largely or entirely

14  offset the capital gain realized as a result of the sale of Swartz's business in 1999, but

15  that would result in either a far smaller loss in real terms, or possibly even a small

16  profit.

17         27.     The essential features of the BLIPS transaction, as explained by the

18  KPMG Defendants, were as follows:

19             (a)     First, the gist of BLIPS is to "create" a paper capital loss to

20  offset a real capital gain by contributing a line of credit to a newly formed limited

21  liability company.  In this case, Swartz contributed (1) capital of $1,400,000  (2) a $53

22  million line of credit consisting of (i) a $33,300,000 line of credit secured by a

23  $33,300,000 note and (ii) a $20,000,000 unsecured premium that was provided by

24  Deutsche Bank AG and Deutsche Bank Securities, Inc. and subsequently assigned to an

25  entity created solely for this purpose known as Longs Strategic Investment Fund, LLC.

26

SECOND AMENDED COMPLAINT – 10
U.S.D.C. C03-1252P

(b)     After the credit facility is assigned to the new LLC, the new LLC is dissolved when the taxpayer intends to utilize his tax losses, and securities are distributed with a tax opinion which alleges that the securities have a basis equal to the capital contribution ($1,400,000), plus the loan premium ($20,000,000), minus the fair market value of any property distributed (in this case cash of $98,369, *i.e.*, $348,733 less the $250,000 fee paid to KPMG along with 425 shares of Microsoft Corporation having a fair market value of $39,897), plus/minus any income or loss from the investment fund (in this case Longs Strategic Investment earned interest income of $86,463 and purportedly lost $431,125).   In Swartz's case, the KPMG tax opinion and Brown & Wood tax opinion wrongfully alleged that the 425 shares of Microsoft stock had a basis of $20,956,969 or $49,311 per share.   In applying this formula to Swartz's case, the sale of 364 shares of Microsoft stock would trigger a purported 1999 capital loss of $17,906,873.

(c)     By varying the amount of the line of credit and the timing of the dissolution of the new LLC, the promoters were able to vary the timing and the amount of the capital loss. (In this case the $17,906,873 purported capital loss was generated within 60 days.) In order to create the appearance of a legitimate business purpose, the BLIPS transaction was marketed as a hedging strategy in foreign currency futures.   In this case two trades were  reported by Presidio Advisory Services, LLC. The first trade was a Hong Kong Dollar short sale.   The second was an Argentine Peso short sale.

28.     Each of these steps proposed to Swartz by the KPMG Defendants, acting pursuant to an arrangement with Brown & Wood and Ruble, were to be fully planned in advance as a single transaction designed to reduce or eliminate tax liability for his substantial capital gains in 1999.

SECOND AMENDED COMPLAINT – 11
U.S.D.C. C03-1252P

29.    The KPMG Defendants, acting pursuant to an arrangement with Brown & Wood and Ruble, advised Swartz that because the basis of his securities distributed upon withdrawal from Longs Strategic Investment Fund, LLC would exceed $18,000,000, upon the sale of the securities, Swartz would realize a large capital loss that could be applied to substantially reduce or eliminate the large capital gains realized by Swartz in 1999 as a result of the sale of his business, and thus substantially reduce or eliminate Swartz's tax liability for these capital gains.    The KPMG Defendants, acting pursuant to an arrangement with Brown & Wood and Ruble, further advised Swartz that the precise amount of capital loss that was to be generated by the BLIPS transaction could be chosen beforehand, and advised him not to choose a loss so large that it would offset the capital gains entirely.

30.    The KPMG Defendants further advised Swartz that the IRS might audit his tax return as a result of the BLIPS transaction, but that Brown & Wood and Ruble would provide him with an "opinion letter" that would confirm to the IRS's satisfaction the propriety of the BLIPS transaction and of Swartz claiming the resulting capital losses on his tax return.    On information and belief, Brown & Wood and Ruble had already prepared "canned" opinion letters approving the BLIPS transactions and needed only to fill in several blanks for each of the many clients for whom they rendered such "opinion letters."

31.    The KPMG Defendants informed Swartz that the total fee for bringing about the BLIPS transaction and providing him with the Brown & Wood opinion letter would be $250,000.

32.    The KPMG Defendants also informed Swartz that depending on the exchange rate between the U.S. dollar and the foreign currencies involved in the currency trading, Swartz could realize a pre-tax gain or loss as a result of trading in foreign currencies.    However, the KPMG Defendants assured Swartz that the tax

SIRIANNI YOUTZ
MEIER & SPOONEMORE
719 SECOND AVENUE, SUITE 1100
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303   FAX (206) 223-0246

benefits to him of the BLIPS transaction as a whole, resulting from the creation of capital losses to offset existing capital gains, far outweighed any losses that could be incurred as a result of the currency transactions.

33.    The KPMG Defendants advised Swartz that the capital losses created by the BLIPS transaction were legitimate and in accordance with all applicable tax laws, rules and regulations.  In particular, the KPMG Defendants advised Swartz that the BLIPS transaction was not a "sham transaction" that would be ignored or disallowed for tax purposes and that the opinion letter of Brown & Wood would confirm this.

34.    The KPMG Defendants, acting pursuant to an arrangement with the Brown & Wood Defendants advised Swartz that the BLIPS transaction would require over 60 days to complete and had to be completed by the end of calendar year 1999 in order to have its desired effect.

35.    The KPMG Defendants refused to allow Swartz to retain copies of any of the materials reviewed by him, purportedly for confidentiality reasons.

**Swartz Took Defendants' Advice And Engaged In The BLIPS Transaction**

36.    Based on his relationship of trust and confidence with the KPMG Defendants, their advice, and on the promised formal opinion letter of Brown & Wood confirming the propriety of the BLIPS strategy, and based on the representations of Baumann, Swartz decided to engage in the BLIPS transaction.  KPMG and the other Defendants orchestrated the entire BLIPS transaction for Swartz.

37.    On September 30, 1999, based on the direction of the KPMG Defendants, the promised formal opinion letter of Brown & Wood confirming the propriety of the BLIPS strategy, and the representations of Baumann, Swartz through Presidio Advisory Services, Presidio Growth, Deutsche Bank and Deutsche Bank

SECOND AMENDED COMPLAINT – 13
U.S.D.C. C03-1252P

SIRIANNI YOUTZ
MEIER & SPOONEMORE
719 SECOND AVENUE, SUITE 1100
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246

Securities entered into a Credit Agreement for $33.3 million which required an additional premium of $20 million.

38.    On October 12, 1999, at the direction of the defendants, Swartz assigned a Letter of Credit issued by Deutsche Bank in the amount of $33.3 million to Longs Strategic Investment Fund, LLC.

39.    On November 29, 1999, based on the direction of the KPMG Defendants, the promised formal opinion letter of Brown & Wood confirming the propriety of the BLIPS strategy, and the representations of Baumann, Swartz requested the withdrawal of his capital account balance of Longs Strategic Investment Fund, LLC. On November 30, 1999, Steven Buss, the Managing Director of Presidio Growth, LLC and Presidio Advisory Services, Inc. elected to dissolve Longs Strategic Investment Fund, LLC effective December 13, 1999, and to terminate the Deutsche Bank Line of Credit.

40.    As a result of the above transactions Swartz paid a fee to KPMG of $250,000; a management fee to Presidio of $550,000; and fees to Deutsche Bank which included $678,460 in interest, $49,312 representing a bank custody fee plus a $117,334 breakage fee and a $16,539 guaranteed payment fee.  In addition, Swartz incurred a loss of $187,790 on two currency transactions, one involving Argentine Pesos and the second involving Hong Kong Dollars.

41.    Dale Baumann of KPMG implemented all transactions with Deutsche Bank and Presidio Advisory Services, LLC and Presidio Growth LLC.

42.    On or about December 13, 1999, the Deutsche Bank Line of Credit was liquidated at the direction of and on the instructions of the KPMG Defendants, the promised formal opinion letter of Brown & Wood confirming the propriety of the BLIPS strategy, and the representations of Baumann.  As a distribution in liquidation of Longs Strategic Investment Fund, LLC, Swartz received cash of $98,733 and 425 shares

SECOND AMENDED COMPLAINT – 14
U.S.D.C. C03-1252P

SIRIANNI YOUTZ
MEIER & SPOONEMORE
719 SECOND AVENUE, SUITE 1100
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246

1    of Microsoft Corporation stock with a value of $39,897 after payment of all the fees

2    associated with the BLIPS transaction.

3                    **Defendants' Further Advice And Opinion Letters To Swartz**

4            43.    The KPMG and Brown & Wood Defendants each issued an

5    Opinion Letter dated December 31, 1999, that confirmed to Swartz that as a result of

6    the above-described series of steps taken by Swartz between September 30 and

7    December 13, 1999, Swartz could properly claim capital losses on his individual tax

8    return for 1999 in the total amount $18,237,999.

9            44.    In the Brown & Wood opinion letter, Brown & Wood and

10   defendant Ruble advised Swartz, among other things: (1) that Swartz had made a

11   capital contribution of $54,700,000 which includes a $33,300,000 line of credit secured

12   by a note of $33,300,000 to Deutsche Bank, a loan premium of $20,000,000 from

13   Deutsche Bank which is unsecured by a note, and a capital contribution of $1,400,000;

14   (2) that the $20,000,000 loan premium would not constitute a liability to the Investor or

15   the Partnership for purposes of Code § 754, when the line of credit has not been

16   utilized; (3) upon liquidation of Swartz's partnership interest, Swartz would have an

17   adjusted basis of $21,400,000 ($20,000,000 line of credit, plus $1,400,000 capital

18   contribution) plus or minus its applicable share of partnership income or loss in its

19   partnership interest, reduced by actual cash received of $348,733 and a residual amount

20   allocated to the 425 shares of Microsoft Corporation received which were valued at

21   $39,879; (4) "[t]he step transaction and sham transaction doctrines should not apply to

22   the transactions described herein;" and (5) and the various steps of the BLIPS

23   transaction described above were "meaningful and imbued with non-tax

24   considerations." The substance of these and the remaining opinions contained in the

25   Brown & Wood opinion letter was to assure Swartz that he was legally entitled to a

26   capital loss of $18,227,999 after the liquidation of Longs Strategic Investment Fund,

SECOND AMENDED COMPLAINT – 15
U.S.D.C. C03-1252P

LLC, which could be used to offset approximately $18,000,000 in capital gains generated from the sale of Swartz's business. Additionally, Brown & Wood and Ruble included in their opinion letters the finding that "the Transaction would not constitute a tax shelter within the meaning of [Internal Revenue] Code Section 6111(c)(1) and, therefore, would not be required to be registered under Code Section 6111(a)."

45.    Based upon the tax advice, legal advice and professional services rendered by the defendants, Swartz signed and filed his 1999 federal income tax return.

46.    Brown & Wood and Ruble knew or should have known at the time they issued their opinion letter that the BLIPS transaction did constitute a tax shelter within the meaning of Code Section 6111(c)(1), and that they, along with the KPMG Defendants, were therefore illegally promoting an unregistered tax shelter by marketing the BLIPS transaction to their clients.  Nevertheless, the defendants failed to inform Swartz of the illegality of the BLIPS tax shelter scheme and, in fact, advised him to the contrary.

47.    The KPMG Defendants knew or should have known when they advised Swartz to enter into the BLIPS transactions and when they prepared Swartz's 1999 federal income tax return that the BLIPS transactions did constitute a tax shelter within the meaning of Code Section 6111(c)(1) and that they, along with Brown & Wood and Ruble, were therefore illegally promoting an unregistered tax shelter by marketing the BLIPS transactions to their clients.  The defendants failed to inform Swartz of this and, in fact, advised him to the contrary.

48.    The KPMG opinion letter and the Brown & Wood opinion letter wrongfully ignored the intent of IRS Notice 1999-59, published on December 27,1999, entitled "Tax Avoidance Using Distributions of Encumbered Property." In that notice, the IRS stated:

SIRIANNI YOUTZ
MEIER & SPOONEMORE
719 SECOND AVENUE, SUITE 1100
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246

[T]he Internal Revenue Service and Treasury Department have become aware of certain types of transactions, as described below, that are being marketed to taxpayers for the purpose of generating tax losses. This notice is being issued to alert taxpayers and their representatives that the purported losses arising from such transactions are not properly allowable for federal income tax purposes.

...

Through a contrived series of steps, taxpayers claim tax losses for capital outlays that they have in fact recovered. Such artificial losses are not allowable for federal income tax purposes.

49.    As a result of IRS Notice 1999-59 and otherwise, KPMG and the Brown & Wood Defendants knew or should have known at the time they issued their opinion letters to Swartz that the purported losses arising from the BLIPS transaction were not properly allowable for federal income tax purposes, but failed to inform Swartz of this and indeed informed him to the contrary.

50.    The KPMG Defendants, before soliciting Swartz, before providing advice and direction to him in carrying out the BLIPS transactions, and otherwise before preparing Swartz's 1999 tax return, knew or should have known, that the purported losses arising from the BLIPS transaction were not properly allowable for federal income tax purposes, but failed to inform Swartz of this and indeed informed him to the contrary.

51.    On September 5, 2000, the IRS published Notice 2000-44, entitled "Tax Avoidance Using Artificially High Basis."  That Notice addressed "similar transactions [to those described in Notice 1999-59] that purport to generate tax losses for taxpayers."  Notice 2000-44 specified the precise transaction marketed by the Defendants to Swartz as the BLIPS transaction, under which the taxpayer purchases call options and simultaneously writes offsetting call options, transfers the option positions to a partnership, and ultimately claims that the basis in his partnership

SECOND AMENDED COMPLAINT – 17
U.S.D.C. C03-1252P

interest "is increased by the cost of the purchase call options but is not reduced under [Internal Revenue Code] § 752 as a result of the partnership's assumption of the taxpayer's obligation." The IRS again stated that "[t]he purported losses from these transactions (and from any similar arrangements designed to produce non-economic tax losses by artificially overstating basis in partnership interests) are not allowable as deductions for federal income tax purposes."

52.     The Defendants knew or should have known, as a result of IRS Notice 2000-44 or otherwise, that the purported losses arising from the BLIPS transaction were not properly allowable for federal income tax purposes, but failed to inform Swartz of this. Defendants failed to retract or modify in any way their advice or the opinions expressed in their opinion letters to Swartz, advice and the prepared tax return, which all had the effect of confirming the propriety of claiming as an increase in basis the cost of the long options on Swartz's 1999 income tax return.

### SWARTZ'S DISCOVERY OF DEFENDANTS' SCHEME

53.     Although KPMG served as Swartz's accountants in recommending and implementing his participation in the BLIPS scheme, Swartz initially relied upon Moss Adams LLP, ("Moss Adams") a Seattle accounting firm, to prepare his tax return.

54.     On August 25, 2000, Moss Adams sent a letter to Swartz questioning the validity and legitimacy of the tax opinions provided to Swartz by KPMG and Brown & Wood. Moss Adams advised Swartz that it had requested the assistance of defendant Dale Baumann to determine the scope of the disclosures necessary to limit Swartz's exposure to the accuracy-related penalty of Section 6662. Moss Adams stated that its accountants had reviewed Notice 2000-44, dated August 11, 2000, and believed it directly addressed Swartz's BLIPS transaction. Moss Adams went on to state that it had advised KPMG of its understanding that the Internal Revenue Service considered "purported" losses resulting from such transactions not to represent

SECOND AMENDED COMPLAINT – 18
U.S.D.C. C03-1252P

SIRIANNI YOUTZ
MEIER & SPOONEMORE
719 SECOND AVENUE, SUITE 1100
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303   FAX (206) 223-0246

*bona fide* losses and that they therefore were not allowable as deductions for federal income tax purposes. In response to these serious reservations, defendant Baumann indicated that if Moss Adams were uncomfortable with the limited disclosure he had recommended, then KPMG would be pleased to prepare the tax return. Moss Adams stated that, given the publication of Notice 2000-44, it would not be able to prepare Swartz's 1999 Individual Tax Return unless the return included the filing of a comprehensive disclosure statement (Form 8275 or 8275-R) with respect to the transaction at issue. Moss Adams advised Swartz that it could not gain the level of comfort it deemed necessary to ensure that Swartz would be protected from the accuracy-related penalty of Section 6662 given the filing position proposed by KPMG.

55. On October 10, 2000, Shannon Liston of KPMG sent an e-mail to Michael Hall of Moss Adams advising him (i) not to worry about making changes to the white paper disclosure, (ii) that KPMG would take care of any changes to existing disclosures and add new disclosures, (iii) requesting that Moss Adams delete Longs Strategic Investment Fund, LLC short-term capital loss of $914,815 reported on Statement 14 of the 1999 Federal Tax Return, and (iv) directing Moss Adams to add a short-term capital loss from Swartz's disposition of Microsoft stock.

56. On October 10, 2000, Michael G. Hall of Moss Adams sent a letter to Shannon Liston of KPMG, stating that Moss Adams had resigned from its engagement to prepare Swartz's 1999 U.S. Individual Income Tax Return, stating as its reason that it did not agree with the changes KPMG had requested be made to Swartz's tax return.

**KPMG Notifies Swartz of Problems with BLIPS Transaction**

57. On October 4, 2000, after all of the elements of the BLIPS transaction had occurred, the KPMG Defendants wrote to Swartz and for the first time advised him that the tax benefits that they had promised him from the BLIPS

SIRIANNI YOUTZ
MEIER & SPOONEMORE
719 SECOND AVENUE, SUITE 1100
SEATTLE, WASHINGTON 98104
TEL. (206) 223-0303   FAX (206) 223-0246

1  transaction might be disallowed by the IRS.  By letter dated October 6, 2000, Swartz

2  immediately proposed that KPMG agree to rescind their September 3, 1999 agreement

3  and that KPMG refund the amount of his investment in the BLIPS investment vehicles.

4  The KPMG defendants refused Swartz's proposal.

5        58.    On February 21, 2002, defendant Baumann mailed Swartz a letter

6  stating that KPMG was under examination with respect to its obligation to register and

7  maintain lists on tax shelters and that KPMG expected the IRS to require KPMG to

8  furnish a list of clients that participated in transactions that the government might

9  consider substantially similar to the transactions described in Notice 2000-44, 2000-2

10  C.B. 255 (*i.e.*, BLIPS and similar transactions).  The letter also stated that the Internal

11  Revenue Service had recently announced its willingness to waive potential

12  accuracy-related penalties for certain disclosed items, and that KPMG recommended

13  that Swartz take advantage of any opportunity afforded to him by this initiative.  The

14  letter advised Swartz to make a prompt disclosure in accordance with the IRS

15  announcement.

16        59.    Brown & Wood sent a similar letter to Swartz on March 5, 2002,

17  wherein the law firm advised Swartz that he should consider disclosing to the IRS that

18  he had participated in the BLIPS transaction and that KPMG had filed a return on his

19  behalf reflecting the effect of the transaction.

20  **The Conspiracy And Partnership Among The Defendants**

21        60.    On information and belief, the KPMG Defendants, Brown & Wood

22  and Ruble, entered into an agreement, association and union associated in fact to

23  devise and promote the BLIPS transactions, for the purpose of receiving and splitting

24  millions of dollars in fees ("the Defendants' arrangement").  The receipt of those fees

25  was the sole motive in the development and execution of the scheme.  Further, the

26  amount of fees earned by the aforementioned Defendants was not tied to or reflective

SECOND AMENDED COMPLAINT – 20
U.S.D.C. C03-1252P

of the amount of time and effort they expended in providing legal, tax or accounting services, but rather was tied to the amount of the capital losses each client would claim on his or her tax returns and the amount of the tax the clients would avoid.  Indeed, the aforementioned Defendants devised the scheme and agreed to provide a veneer of legitimacy to each others' opinions as to the lawfulness and tax consequences of the plan by agreeing to issue allegedly "independent" opinions, before potential clients were solicited.  The aforementioned Defendants then proposed the transactions to Swartz, as well as other clients, and solicited their use of the BLIPS transactions, rather than simply respond to requests for tax guidance and advice from existing clients. Accordingly, the receipt of fees and the pecuniary gain from those fees was the sole motive for those Defendants' conduct; the provision of professional services to clients was merely an incidental by-product of, not a motivating factor for, Defendants' conduct alleged herein.  Further, the Defendants' arrangement gave each of the participating Defendants a significant pecuniary interest in the advice and professional services they would render, allowed the KPMG Defendants to direct and regulate the professional judgment of the Brown & Wood Defendants, and impaired the exercise of that judgment and the duty of care, loyalty and honesty each of the aforementioned Defendants owed to Swartz and their other clients.

61.     The KPMG Defendants had a financial, business and property interest in inducing Swartz, as well as other clients, to enter into the BLIPS transactions, and to do so, promised, opined and assured that the transactions would enable Swartz and others to avoid taxes.  The KPMG Defendants never disclosed to Swartz that their representation of him and their objectivity, integrity and professional care would be materially impaired by their own interests in the transactions in violation of Sections 53, 54 and 55 of the American Institute of Certified Public Accountants ("AICPA") Code of Professional Conduct.

SECOND AMENDED COMPLAINT – 21
U.S.D.C. C03-1252P

SIRIANNI YOUTZ
MEIER & SPOONEMORE
719 SECOND AVENUE, SUITE 1100
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246

62.    All of these defendants knew that the series of BLIPS transactions were predetermined steps to generate sham losses for the purpose of obtaining tax benefits.  The defendants conducted these transactions numerous times in a pattern of misdeeds and deception.

### DAMAGES SUFFERED BY SWARTZ

63.    As a direct and proximate result of the wrongful conduct of the defendants, Swartz incurred out-of-pocket losses of approximately $2 million.  In addition, Swartz will incur penalties and interest on his unpaid taxes, will incur additional professional fees to mitigate the damages caused by the defendants, and has foregone the opportunity to minimize his taxes for 1999 through legitimate tax planning alternatives.

64.    All of the above factual recitations are realleged and incorporated in the paragraphs below as if fully set forth therein.

### COUNT 1
### Breach Of Fiduciary Duty
### (Brown & Wood Defendants)

65.    The Brown & Wood Defendants, as Swartz's attorneys, were Swartz's fiduciaries, and thus owed Swartz the duties of honesty, loyalty, care and compliance with the applicable codes of professional responsibility.

66.    The Brown & Wood Defendants breached these duties to Swartz.

67.    As a result of the conduct set forth herein, Swartz has suffered injury in his business and property in that he has paid fees and has incurred losses believed to be in excess of $2 million; has incurred or will incur tax penalties and interest; has incurred and will continue to incur substantial additional costs in hiring new tax and legal advisors to rectify the situation, and has foregone legitimate tax savings opportunities.

SECOND AMENDED COMPLAINT – 22
U.S.D.C. C03-1252P

SIRIANNI YOUTZ
MEIER & SPOONEMORE
719 SECOND AVENUE, SUITE 1100
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246

1

2

**COUNT 2**
**Professional Malpractice**
**(KPMG Defendants and Brown & Wood Defendants)**

3       68.    As Swartz's tax advisers, accountants and attorneys, the KPMG

4   Defendants and the Brown & Wood Defendants owed Swartz a duty of care, loyalty

5   and honesty and to comply with the applicable provisions of their codes of

6   professional responsibility.

7       69.    During the course of their representation of Swartz, the KPMG

8   Defendants and Brown & Wood Defendants made numerous knowingly or negligently

9   false affirmative representations and intentional or negligently misleading omissions of

10  material fact to Swartz, including: (1) stating that the so-called BLIPS transaction

11  entitled a taxpayer to include the amount of an unused loan premium on a line of

12  credit in his basis for calculating capital losses thus offsetting capital gains in an

13  unrelated transaction; (2) failing to disclose existing published authority, including

14  Notices published by the IRS, that purported losses arising from such transactions as

15  the BLIPS transaction are not properly allowable for federal income tax purposes; (3)

16  failing to disclose that if Swartz filed a tax return claiming capital losses based on the

17  BLIPS transaction, he could be liable for penalties and interest; (4) failing to advise

18  Swartz to amend his return; (5) making and endorsing the statements contained in the

19  opinion letters signed by Brown & Wood; and (6) making and endorsing the statements

20  contained in the 1999 tax return prepared by KPMG based on Defendants' advice.

21  Defendants either knew or reasonably should have known their advice to be false.  In

22  so doing, Defendants failed to exercise the standard of care required of them as

23  accountants and attorneys.

24       70.    Additionally, KPMG and Brown & Wood violated their respective

25  duties to Swartz by collaborating on their tax opinion letters when they had a duty to

26  provide independent professional judgment about the matters contained therein.

SECOND AMENDED COMPLAINT – 23
U.S.D.C. C03-1252P

SIRIANNI YOUTZ
MEIER & SPOONEMORE
719 SECOND AVENUE, SUITE 1100
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246

Furthermore, the defendants breached their duties to Swartz by providing opinion letters under conditions where they had a direct financial stake in Swartz's decision regarding his participation in the BLIPS transaction.

71.    Swartz fully performed his obligations to the KPMG Defendants and the Brown & Wood Defendants under the terms of their engagement.

72.    Based on Defendants' false representations and misleading omissions regarding the BLIPS transaction, Swartz paid millions of dollars to Defendants for tax and legal advice, paid millions of dollars in additional expenses to execute the BLIPS transaction, did not avail himself of legitimate tax savings opportunities, filed a federal tax return in 1999 that reflected deductions for capital losses resulting from the BLIPS transaction, and did not file an amended return in 2000, 2001 and 2002.  But for Defendants' intentional or negligent misrepresentations and material omissions described above, Swartz would never have hired Defendants for advice on the BLIPS strategy, engaged in the BLIPS transactions, claimed the purportedly resulting capital losses on his income tax return, signed and filed his 1999 tax return as prepared by KPMG or failed to file an amended return or avail himself of legitimate tax savings opportunities.

73.    After discovering Defendants' misrepresentations, Swartz incurred and will continue to incur substantial additional costs in hiring new tax and legal advisors to rectify the situation.

74.    As a result of Defendants' conduct set forth herein, Swartz has suffered injury in his business and property in that he has paid Defendants fees and has incurred losses in excess of $2 million; has incurred or will incur tax penalties and interest; has incurred and will continue to incur substantial additional costs in hiring new tax and legal advisors to rectify the situation, and has foregone legitimate tax savings opportunities.

SIRIANNI YOUTZ
MEIER & SPOONEMORE
719 SECOND AVENUE, SUITE 1100
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246

**COUNT 3**
**Civil Conspiracy**
**(KPMG Defendants and Brown & Wood Defendants)**

75.     As described more fully above, the Defendants knowingly acted in concert to market and implement the improper and illegal BLIPS tax shelter scheme.

76.     In so doing, the Defendants acted with full knowledge and awareness that the scheme was designed to give the false impression that a complex series of financial transactions were legitimate business investments, when in fact they were not.

77.     The Defendants acted in their respective roles as described above according to a predetermined and commonly understood and accepted plan of action, all for the purposes of obtaining professional fees, commissions, interest payments and other transactional fees from consumers, including Swartz.

78.     The acts of the defendants were contrary to numerous provisions of law, as stated above.

79.     As a result of Defendants' conduct set forth herein, Swartz has suffered injury in his business and property in that he has paid Defendants fees and has incurred losses in excess of $2 million; has incurred or will incur tax penalties and interest; has incurred and will continue to incur substantial additional costs in hiring new tax and legal advisors to rectify the situation, and has foregone legitimate tax savings opportunities.

**PRAYER FOR RELIEF**

WHEREFORE, Theodore C. Swartz prays for judgment in his favor as follows:

1.      Against all defendants, jointly and severally, for actual damages in an amount to be proven at trial and believed to be in excess of $2 million, plus attorneys' fees and costs;

SECOND AMENDED COMPLAINT – 25
U.S.D.C. C03-1252P

SIRIANNI YOUTZ
MEIER & SPOONEMORE
719 SECOND AVENUE, SUITE 1100
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303    FAX (206) 223-0246

2.      Against all defendants, jointly and severally, for actual damages in an amount to be proven at trial and believed to be in excess of $2 million;

3.      Against all defendants, jointly and severally, for exemplary damages, attorneys' fees and costs to the maximum extent provided by any applicable provision of law; and

4.      For such other relief as the Court deems just and equitable.

DATED: July 9, 2004.

SIRIANNI YOUTZ
MEIER & SPOONEMORE


/s/ RICHARD E. SPOONEMORE
Richard E. Spoonemore  (WSBA #21833)
Jonathan P. Meier (WSBA #19991)
Attorneys for Plaintiff

SECOND AMENDED COMPLAINT – 26
U.S.D.C. C03-1252P

**CERTIFICATE OF SERVICE**

I certify, under penalty of perjury and in accordance with the laws of the State of Washington, that on July 9, 2004, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

- **Stuart E. Abrams**
  sabrams@frankelabrams.com

- **Jonathan E Altman**
  altmanje@mto.com

- **Stephen L Ascher**
  sascher@kronishlieb.com

- **Brad D Brian**
  brianbd@mto.com

- **Lisa J. Demsky**
  demskylj@mto.com

- **Richard E Drooyan**
  drooyanre@mto.com

- **Rudy Albert Englund**
  englundr@lanepowell.com
  lunda@lanepowell.com

- **Jessica L Goldman**
  jessicag@summitlaw.com

- **George E Greer**
  ggreer@hewm.com
  sedocketing@hewm.com

- **Charles J Ha**
  cha@hewm.com
  sbarber@hewm.com

- **Rachel B Kane**
  rkane@kronishlieb.com

- **William H O'Brien**
  wobrien@kronishlieb.com

- **William J Schwartz**
  wschwartz@kronishlieb.com

- **Chaya F Weinberg-Brodt**
  cweinberg@kronishlieb.com

DATED:  July 9, 2004, at Seattle, Washington.

/s/ SHARIE L. PARKS
Sharie L. Parks

SECOND AMENDED COMPLAINT – 27
U.S.D.C. C03-1252P

SIRIANNI YOUTZ
MEIER & SPOONEMORE
719 SECOND AVENUE, SUITE 1100
SEATTLE, WASHINGTON  98104
TEL. (206) 223-0303   FAX (206) 223-0246