UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

THEODORE SWARTZ,

                    Plaintiff(s),

          v.

DEUTSCHE BANK, et al.,

                    Defendant(s).

NO. C03-1252MJP

ORDER ON:
1.  DEFENDANTS' MOTIONS TO
DISMISS and FOR SUMMARY
JUDGMENT
2.  PLAINTIFF'S MOTION FOR
 PARTIAL SUMMARY JUDGMENT

The above-entitled Court, having received and reviewed:

1.  Defendant Presidio Advisory Services' Motion to Dismiss (Dkt. No. 247)

2.  Plaintiff's Response to Defendant Presidio Advisory Services' Motion to Dismiss (Dkt. No. 279)

3.  Reply in Support of Defendant Presidio Advisory Services' Motion to Dismiss (Dkt. No. 289)

4.  Plaintiff's Motion for Partial Summary Judgment (Dkt. No. 252)

5.  Defendant Presidio Advisory Services' Response to Plaintiff's Motion for Partial Summary Judgment (Dkt. No. 280)

6.  Reply in Support of Plaintiff's Motion for Partial Summary Judgment (Dkt. No. 287)

7.  Defendant Steven Buss's Motion to Dismiss (Dkt. No. 297)

8.  Defendant Steven Buss's Request for Judicial Notice (Dkt. No. 298)

9.  Plaintiff's Response to Defendant Steven Buss's Motion to Dismiss (Dkt. No. 316)

10.  Reply in Support of Defendant Steven Buss's Motion to Dismiss (Dkt. No. 321)

11.  Defendant Makov's Motion to Dismiss (Dkt. No. 302)

12.  Plaintiff's Response to Defendant Makov's Motion to Dismiss (Dkt. No. 315)

13.    Reply in Support of Defendant Makov's Motion to Dismiss (Dkt. No. 320)

and all exhibits and declarations attached thereto[1], and having heard oral argument on the motions[2], makes the following ruling:

IT IS ORDERED that the motions of Defendant Buss and Defendants Hayes Street Management and Morley, Inc. to dismiss for lack of personal jurisdiction are GRANTED.

IT IS FURTHER ORDERED that the motions of Defendants Pfaff, Larson and Makov to dismiss for lack of personal jurisdiction are DENIED; the motions of Pfaff and Larson to dismiss for failure to state a claim upon which relief can be granted are DENIED, and the Court calls for further briefing on whether dismissal of their claims on FRCP 12(b)(6) grounds is warranted.

IT IS FURTHER ORDERED that the motion of Defendant Makov to dismiss for failure to state a claim upon which relief can be granted (FRCP 12(b)(6)) is GRANTED.

IT IS FURTHER ORDERED that the motion of the Presidio Defendants to dismiss for failure to state a claim upon which relief can be granted (FRCP 12(b)(6)) is PARTIALLY DENIED and PARTIALLY GRANTED.  The following claims against Presidio are dismissed: constructive trust (Claim 4); violations of §§ 12, 15 and 20(a) of the Securities Exchange Act (a portion of Claim 5); violation of the Investment Advisers Act (Claim 6); professional negligence (a portion of Claim 7); breach of contract (Claim 9); unjust enrichment (Claim 10); rescission (Claim 11); and violation of the Washington Criminal Profiteering Act (Claim 12).  The following claims against Presidio will not be dismissed: conspiracy (Claim 1); fraud/misrepresentation (Claim 2); breach of fiduciary duty (Claim 3); violations of § 10(b) and Rule 10b-5 of the Securities Exchange Act (a portion of Claim 5); violation

---

[1]    Several other defendants (Deutsche Bank, Holland & Hart, Walter Conston Alexander and Green PC, and Grant Thornton LLP) filed motions to dismiss, but settled with Plaintiff prior to issuance of this order.

[2]    Upon review of the written pleadings, it was the Court's opinion that Plaintiff had failed to respond to many of the Defendants' arguments.  At oral argument, Plaintiff's counsel cited to those portions of his pleadings which he considered responsive to the areas mentioned by the Court; the Court re-read those portions of Plaintiff's briefing and considered them fully in reaching this decision.

**ORDER ON MTNS TO**
**DISMISS/PARTIAL S-J - 2**

1

2  of the Washington State Securities Act (Claim 7); and negligent misrepresentation (a portion of Claim

3  8).

4          IT IS FURTHER ORDERED that the Plaintiff will not be granted leave to further amend those

5  claims dismissed pursuant to FRCP 12(b)(6), based on the Court's findings that further amendment

6  would be both futile and not in the interests of justice or judicial economy.

7          IT IS FURTHER ORDERED that Plaintiff's motion for partial summary judgment is

8  DENIED.

9          IT IS FURTHER ORDERED that the trial date of May 14, 2008 is STRICKEN; the remaining

10  parties are directed to file an updated Joint Status Report by May 12, 2008.

11

12                                      **Background**

13          On February 13, 2004, this Court granted in part and denied in part the motions of the

14  defendants to dismiss Plaintiff's original complaint.  Swartz v. KPMG et al., 402 F. Supp. 2d 1146

15  (W.D.Wash. 2004) ("Swartz I"); Dkt. No. 97.  Plaintiff appealed both the order of dismissal and the

16  Court's refusal to permit him leave to amend.  The Ninth Circuit affirmed the majority of the ruling

17  ("[w]ith the exception of its holding that the allegations in the complaint ruled out 'reasonable

18  reliance' as a matter of law, the district court did not err in *Swartz I* and we adopt its decision in large

19  measure"), but ruled that Plaintiff should be granted leave to amend his state law claims, specifically

20  those sounding in fraud.  Swartz v. KPMG et al., 476 F.3d 756 (9th Cir. 2007) ("Swartz II").

21          Plaintiff responded to that reprieve with a 133-page, 437-paragraph document, adding a host

22  of new defendants and a plethora of new causes of action.  (Dkt. No. 184.)  The following factual

23  allegations are drawn from Plaintiff's Third Amended Complaint ("TAC"), filed October 9, 2007:

24          In 1999, Plaintiff Theodore C. Swartz realized profits of some $18 million from the sale of a

25  business.  (¶ 122.)  Plaintiff's broker contacted former defendant KPMG, a large accounting firm, and

26  **ORDER ON MTNS TO
DISMISS/PARTIAL S-J - 3**

KPMG in turn approached Plaintiff about investing in the Bond Linked Issue Premium Structure ("BLIPS") program.  (Id.)  KPMG introduced Plaintiff to Defendant Presidio Growth, LLC.  ("PG, LLC," ¶ 131.)  Presidio Growth provided Plaintiff with a Strategic Investment Funds Confidential Memorandum ("Confidential Memorandum") in August 1999, which indicated that Presidio Growth was a registered investment advisor whose parent company was Defendant Presidio Advisory Services, LLC.  (Id.)  The Confidential Memorandum named Presidio Growth as the Fund Manager that would seek to provide investors "with a high total return" through a three-stage, seven-year investment program that sought to "exploit trading opportunities in the markets for foreign debt securities and currencies[.]" (¶ 132.)  According to the prospectus in the Confidential Memorandum, this would be accomplished by utilizing a high-degree of leverage produced by a loan with an above-market interest rate.  (¶ 133.)

On August 24, 1999, Presidio formed Longs Strategic Investments, LLC (Longs) as a Delaware LLC, to serve as "the vehicle through which Swartz participated in the investment program."  ( ¶ 136.)  Presidio Advisory, LLC created Presidio Growth and Presidio Resources, LLC to serve as the Managing Member of Longs, which would "direct and control a 'Strategic Investment Fund' partnership specific to each BLIPS client."  ( ¶ 277.)  Presidio also hired a law firm (former defendant Walter Conston Alexander & Green PC) to organize Gascoyne Ventures, LLC ("Gascoyne"), which was owned entirely by Plaintiff.  ( ¶ 137.)  Presidio Resources made an initial cash contribution to Longs of $140,000, Presidio Growth as Managing Member contributed $15,554, and Gascoyne contributed $54.4 million, which included a $1.4 million cash contribution from Plaintiff and a $53 million loan obtained through Defendant Deutsche Bank AG.  ("DB")(¶¶ 140, 153-54.)

In its Engagement Letter with Plaintiff, sent September 1, 1999, KPMG described Presidio's general role in the BLIPS investment program: "KPMG understands that Client (Swartz) intends to

**ORDER ON MTNS TO**
**DISMISS/PARTIAL S-J - 4**

engage Presidio Advisors, LLC to provide Client with investment advisory services and trading strategies with respect to the foreign exchange contracts entered into pursuant to the [BLIPS program]. Presidio will assist Client in structuring the requisite financing package by advising clients as to the structure of the financing arrangement[.]" (¶¶ 124-25.) The Engagement Letter also stated: (1) that Presidio will "act as Investment Advisor to the limited partnership... and will facilitate the purchase of foreign currency contracts and other financial instruments;" (2) that the "Client has independently determined that there is a reasonable opportunity for Client to earn a reasonable pre-tax profit from the Investment Program and this determination has been confirmed by Presidio and/or other investment advisors," (¶ 126);" and (3) that "[a]ny tax opinion issued by KPMG… would provide that with respect to the tax consequences described in the opinion, there is a greater than 50 percent likelihood that those consequences will be upheld if challenged by the [IRS]." (¶ 126.)

In a document dated September 30, 1999, DB and Gascoyne entered an Account Control Agreement that put the investment account "under the sole dominion and control of Deutsche Bank AG," superseding the authority over the investment account that would have been exercised by either Gascoyne or Presidio.  (¶¶ 141-46.) On October 12, 1999, Presidio Growth and Gascoyne executed the Agreement of Longs Strategic Investment Fund, LLC ("Longs Agreement"), which allocated the Net Profits and Net Losses according to the class of the membership in Longs and the amount contributed. (¶ 153.)

After Gascoyne contributed the accumulated funds into Longs, Longs deposited the money into an account controlled by DB (¶ 170) and a series of foreign currency and stock transactions were undertaken. (¶¶ 171-72.)  Presidio then employed an accounting firm (former defendant Grant Thornton LLC) to prepare the tax returns for Longs; the firm reported a tax loss based on the foreign currency and stock transactions and also both a management fee of $550,000 to Presidio and various

1

2  fees paid to DB.  (¶ 175.)  In their preparation of the schedule K-1, the accounting firm indicated that

3  there "was a capital loss of $20,956,969" for Gascoyne.  (¶¶ 175-77.)

4          On December 31, 1999, Swartz received the tax opinion letters from KPMG and a law firm

5  (former defendant Brown & Wood) stating that there was greater than 50% likelihood that the tax

6  outcome from the BLIPS program would be upheld if challenged by the Internal Revenue Service

7  ("IRS").  (¶ 178.)  Plaintiff also received "opinion letters regarding the investment program" created

8  by the defendant law firm of Holland & Hart LLP ("H&H").  Plaintiff alleges that H&H (along with

9  other law firms employed by Defendants) were "partners in the joint venture" and not the independent

10  legal advisers that Presidio represented them to be.  (¶¶ 245-46.)  Plaintiff alleges that all the

11  defendants "knew the form and substance of these opinion letters long before they were ever provided

12  to Plaintiff" and "that the opinion letters contained material misrepresentations of fact" and "contained

13  opinions that were phony."  (¶¶ 245-247.)  He further claims that H&H could not be relied upon to

14  provide an independent opinion, that "all of the joint venture partners knew" this, and that no one

15  ("including anyone from any of the law firms") told Plaintiff.  (¶ 255.)

16          Plaintiff bases his claims against Presidio on alleged misrepresentations made in three

17  documents:

18          1. The KPMG Engagement Letter from September 1, 1999 wherein Presidio confirmed that

19          there was a reasonable opportunity for Swartz to earn a reasonable pre-tax profit.  (¶ 126.)

20          Plaintiff alleges that he relied on this representation, among others, in deciding to enter into the

21          BLIPS investment program.  (¶ 128; see Exhibit 2, Parts 4-5.)

22          2. The Confidential Memorandum from August 1999 representing that the investment plan

23          consisted of "investment pools" which would use premium loans for leverage, that the program

24

25

26  **ORDER ON MTNS TO**
    **DISMISS/PARTIAL S-J - 6**

would take seven years, and that there was a reasonable opportunity for the Investor (Swartz) to earn a reasonable pre-tax profit. (¶¶ 132, 210.) Plaintiff alleges these are misrepresentations because the investment funds were only designed to create the appearance of economic substance for the BLIPS program and that the chance of an investor achieving a profit was "remote." (¶ 212.)

3. The <u>Longs Agreement</u> between Presidio Growth, and Gascoyne Ventures that purported to allocate the net profits and losses. (¶ 153.)

Plaintiff alleges that the defendants, including Presidio Defendants, designed BLIPS to deceive investors into thinking that it would provide a legitimate vehicle to earn money, but knew the "investment program lacked economic substance" because the loan proceeds that were supposed to be integral to the program were never made available for investment. (¶ 180.) Plaintiff also alleges that the Presidio Defendants fraudulently took management fees from Plaintiff's initial contribution, despite not having the alleged loan funds under their control to invest. (<u>Id.</u>) Plaintiff alleges further that the fraudulent action caused injury "in his business and property in that he has paid Defendants fees and has incurred losses in excess of $2 million[.]" (¶ 318.)

Defendant Steven Buss (along with co-defendants Makov, Pfaff and Larson) is alleged to be a principal and agent of all the Presidio entities (¶ 114), which are further alleged to be "mere shell companies." (¶¶ 117-18.) Plaintiff's TAC contains a 66-item "list of contacts" with the forum state (¶¶ 27-93) – Buss is named in five of them:

1.      A letter to Plaintiff concerning wire transfer instruction (¶ 77)

2.      A fax concerning a Longs contribution by Gascoyne (¶ 78)

3.      Two faxes to DB on which Plaintiff was copied (¶¶ 87, 88)

4.      A cover letter to Gascoyne attaching the Longs Schedule K-1 form (¶ 89).

There is one other mention of Buss in the TAC: on November 29, 1999, as Managing Director of Presidio Growth and Presidio Advisory Services, he dissolved Longs and terminated the DB Line of Credit.  (¶ 173.)

Plaintiff alleges twelve causes of action against all of the defendants: 1) a "Joint Venture Conspiracy" to defraud Plaintiff (¶¶ 307-18); 2) Fraud and Misrepresentation (¶¶ 319-39); 3) Breach of Fiduciary Duty and Aiding and Abetting Breach of Fiduciary Duty (¶¶ 340-58); 4) Constructive Trust (¶¶ 359-61); 5) Violations of Sections 10(b), 12, 15, and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 (¶¶ 363-84); 6) Violation of the Investment Advisers Act of 1940 and Aiding and Abetting Violation of the Investment Advisers Act of 1940 (¶¶ 385-90); 7) Violation of the Washington State Securities Act (¶¶ 391-403); 8) Professional Negligence and Negligent Misrepresentation (¶¶ 404-11); 9) Breach of Contract (¶¶ 412-18); 10) Unjust Enrichment (¶¶ 419-26); 11) Rescission ( ¶¶ 427-30); and 12) Violation of the Washington Criminal Profiteering Act (¶¶ 431-37).

**Discussion**

I. Standard of review

In a motion to dismiss under F.R.C.P. 12(b), all well-pleaded allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party. Zimmerman v. City of Oakland, 255 F.3d 734, 737 (9th Cir. 2001).  A complaint should not be dismissed unless it offers no set of facts in support of the claim that would entitle the plaintiff to relief. No. 84 Employer-Teamster Joint Council v. America West Holding Corp., 320 F.3d 920, 931 (9th Cir. 2003).  However, conclusory allegations and unwarranted inferences are insufficient to defeat a motion to dismiss.  Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003) (citations omitted).  A plaintiff's obligation in his pleadings extends beyond merely repeating the

elements of a cause of action, and must provide the factual grounds for his entitlement to relief. <u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955, 1964-65 (2007). Also, a court is not required to accept facts in the complaint that contradict facts in documents referred to in the complaint. <u>Steckman v. Hart Brewing Inc.</u>, 143 F.3d 1293, 1295-96 (9th Cir. 1998) (citation omitted).

Concerning Plaintiff's motion, summary judgment is not warranted if a material issue of fact exists for trial. <u>Warren v. City of Carlsbad</u>, 58 F.3d 439, 441 (9th Cir. 1995), <u>cert. denied</u>, 516 U.S. 1171 (1996). The underlying facts are viewed in the light most favorable to the party opposing the motion. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). "Summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). The party moving for summary judgment has the burden to initially show the absence of a genuine issue concerning any material fact. <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 159 (1970). This can be done by either producing evidence negating an essential element of plaintiff's claim, or by showing that plaintiff does not have enough evidence of an essential element to carry its ultimate burden at trial. <u>Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.</u>, 210 F.3d 1099, 1103 (9th Cir. 2000). However, once the moving party has met its initial burden, the burden shifts to the nonmoving party to establish the existence of an issue of fact regarding an element essential to that party's case, and on which that party will bear the burden of proof at trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986). To discharge this burden, the nonmoving party cannot rely on its pleadings, but instead must have evidence showing that there is a genuine issue for trial. <u>Id.</u> at 324.

There are certain aspects of the motions to dismiss for which a common analysis and disposition is appropriate. Those elements will be discussed and disposed of first.

II.  Judicial notice

Plaintiff requests that the Court take judicial notice that on September 10, 2007, David Amir Makov, a managing member of Presidio and a defendant in this case, entered a plea of guilty to the charge of conspiracy to violate the Internal Revenue Code with other Presidio actors.  Plaintiff requests that the Court take judicial notice of the Superseding Information filed against Makov, the transcript of his guilty plea ("the Allocution") and assorted other documents related to Makov's criminal conviction,[3] and relies on references to the Makov plea and superseding information repeatedly in support of the arguments in his briefs.  Defendants argue that references to the contents of the Makov Allocution and Superseding Information should be stricken as they are materials outside the pleadings, and are not judicially noticeable.   Plaintiff also requests that the Court take judicial notice of the 2005 Senate Report from hearings held in November 2003, entitled "The Role of Professional Firms in the U.S. Tax Shelter Industry."

The Court will consider the contents of the 2005 Senate Subcommittee Report because it is referenced in the TAC.  It is proper in ruling on the sufficiency of a complaint to consider exhibits attached to the complaint and matters properly the subject of judicial notice.  See Hal Roach Studios v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990); Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).

The contents of the Makov allocution and the Superseding Information, however, are beyond the proper scope of what the Court may consider.  Neither document was attached to nor referenced in the TAC, and, while the existence of the plea is properly subject to judicial notice,  the contents of the documents Plaintiff submitted are not judicially noticeable for the purpose for which Plaintiff

---

[3] None of these documents are referenced in Plaintiff's TAC.

**ORDER ON MTNS TO DISMISS/PARTIAL S-J - 10**

introduces them; i.e., the truth of the matters contained therein.

Public records are subject to judicial notice.  <u>Lee v. City of Los Angeles</u>, *supra*.  Under Federal Rule of Evidence ("FRE") 201(a)-(b), a court may take judicial notice of adjudicative facts "not subject to reasonable dispute[.]"   In <u>Lee</u>, the Ninth Circuit reversed the trial court, not for taking judicial notice of the existence of a particular hearing, but for taking judicial notice of the facts contained in those noticeable matters of public record.  250 F.3d at 689-90.  Plaintiff has not established that the contents of either the Superseding Information or the Allocution are undisputed.  This Court will take judicial notice of the existence of Makov's guilty plea, but not of the truth of the matters stated within those materials.  <u>See</u> <u>Wyatt v. Terhune</u>, 315 F.3d 1108, 1114 (9th Cir. 2003) (concluding that taking judicial notice of the findings of fact from another case exceeds scope of FRE 201).

III.  <u>Statute of limitations</u>

Almost all the remaining defendants (with the exception of Defendant Buss, whose primary theory of dismissal is lack of personal jurisdiction) attack Plaintiff's lawsuit on statute of limitation grounds.

Plaintiff's TAC combines state and federal causes of action.  In Washington, the statute of limitations for actions seeking relief based on fraud is three years from the date of discovery.  <u>See</u> <u>Hudson v. Condon</u>, 101 Wn.App. 866, 872 (2000) (citing RCW 4.16.080(4)).  The court can infer actual knowledge of the fraud if the aggrieved party, through due diligence, could have discovered the fraud.  <u>Sherback v. Estate of Lyman</u>, 15 Wn.App. 866, 868-69 (1976) (citation omitted).  Thus, the statute of limitations clock is triggered when the aggrieved party discovers, or should have discovered, the facts of the fraud and sustains some damage as a consequence.  <u>First Maryland Leasecorp. v.</u>

**ORDER ON MTNS TO DISMISS/PARTIAL S-J - 11**

Rothstein, 72 Wn.App. 278, 283 (1993).   The discovery rule tolls the date of accrual until the plaintiff "'knows or… should have known' all the facts necessary to establish a legal claim." Crisman v. Crisman, 85 Wn.App. 15, 20 (1997) (citation omitted).  This rule can be applied when a defendant "has fraudulently concealed a material fact from a plaintiff, depriving the plaintiff of the knowledge of the accrual of the cause of action" (Burns v. McClinton, 135 Wn.App. 285, 299-300 (2006) (citation omitted)), and can be applied to both tort and contract claims.  See Wm. Dickson Co. v. Pierce County, 128 Wn.App. 488, 495-96 (2005).

Plaintiff's federal claims all sound in fraud.  The federal statute of limitations for securities fraud under the Exchange Act begins to run when a plaintiff has actual or inquiry notice of the fraudulent misrepresentation.  Reeves v. Teuscher, 881 F.2d 1495, 1500-01 (9th Cir. 1989) (citation omitted).  The Ninth Circuit has adopted the "inquiry-plus-reasonable-diligence test." Betz v. Trainer Wortham & Co., Inc., 2008 WL 495890 *11 (9th Cir. 2008).  A plaintiff is on inquiry notice of a securities fraud claim when "there exists sufficient suspicion of fraud to cause a reasonable investor to investigate the matter further." Id.  The facts constituting inquiry notice "must be sufficiently probative of fraud – sufficiently advanced beyond the stage of mere suspicion... to incite the victim to investigate." Id. (citation and internal quotation marks omitted).  Once the court determines that a plaintiff was on inquiry notice, it then determines whether the objective investor, in the exercise of reasonable diligence, should have discovered the facts constituting the alleged fraud.  Id.

The Ninth Circuit has held that the issue of whether a plaintiff knew or should have known of a cause of action in the federal securities context presents a question for the trier of fact.  Volk v. D.A. Davidson, 816 F.2d 1406, 1417 (9th Cir. 1987) (citation omitted); see also Betz, 2008 WL 495890 *8 (reversing trial court's grant of summary judgment because issue of material fact existed as to whether plaintiff was on inquiry notice of fraud).  The Ninth Circuit has a high bar for deciding the inquiry

notice issue as a matter of law, holding that it is appropriate only when "uncontroverted evidence irrefutably demonstrates plaintiff discovered or should have discovered the fraudulent conduct."  Gray v. First Winthrop Corp., 82 F.3d 877, 881 (9th Cir. 1996) (citation and internal quotation marks omitted) (reversing trial court's grant of summary judgment); see also S.E.C. v. Seaboard Corp., 677 F.2d 1301, 1309-10 (9th Cir. 1982) ("question of notice of fraud is for trier of fact, [and the] party seeking summary disposition has extremely difficult burden[.]")

    The issue of when Plaintiff discovered or should have discovered the fraud which he alleges in his complaint is hotly disputed.  Defendants claim that Plaintiff had ample notice that something was amiss back in 1999 and 2000, with the occurrence of such events as the IRS notices announcing the questionable (and possibly criminal) nature of tax schemes such as BLIPS (Pltf. Response to H&H Motion, Isaacson Decl., Exs. 3 and 4) or the withdrawal of Plaintiff's accounting firm, Moss Adams, from preparation of his tax return based on its doubts about the legitimacy of the claimed BLIPS deductions.  Plaintiff points in turn to countervailing communications from the defendants assuring him of the continuing viability of the program and of their confidence that the scheme would withstand IRS scrutiny, as well as allegedly perjured Senate testimony from as late as July 2005 (Id., Ex. 2, p. 24) to buttress his argument that he cannot be found as a matter of law to have been on inquiry notice for statute of limitation purposes during the period when the BLIPS scheme was actually being promoted and played out.

    The Court agrees with Plaintiff to the extent that it finds the issue of when he received sufficient inquiry notice for statute of limitations purposes to be a question of fact appropriate for the trier of fact.  To that end, and in the interests of judicial economy, the Court will consider bifurcating the case (should it move forward towards trial), permitting discovery only on the notice issue, then conducting a separate and preliminary trial on the statute of limitations issue.  Defendants' argument

**ORDER ON MTNS TO DISMISS/PARTIAL S-J - 13**

that the Court can find in their favor on statute of limitations grounds as a matter of law is rejected and that portion of their motions is denied.

IV.  Specially-appearing Defendants and Defendant Makov

A. *Defendants Larson, Pfaff, Hayes Street Management and Morley, Inc.*

The Presidio Defendants argue that specially-appearing Defendants John Larson, Robert Pfaff, Hayes Street Management ("Hayes"), and Morley, Inc. ("Morley") should have the claims against them dismissed for lack of personal jurisdiction.  Specifically, they argue that Plaintiff has failed to allege any wrongdoing on the part of either Morley or Hayes and that Plaintiff has failed to allege any connection to Washington for Defendants Larson and Pfaff.

Plaintiff bears the burden of establishing that the Court has personal jurisdiction over Defendants.  Fields v. Sedgwick Associated Risks, Ltd., 796 F.2d 299, 301 (9th Cir. 1986) (citation omitted).  Section 27 of the Exchange Act grants jurisdiction to the federal courts and provides for venue and service of process.  Touche Ross & Co. v. Redington, 442 U.S. 560, 577 (1979); see 15 U.S.C. § 78aa.  The Exchange Act provides exclusive jurisdiction in district courts for claims brought under its provisions.  Clark v. Watchie, 513 F.2d 994, 997 (9th Cir. 1975).  Because the Exchange Act is a federal law within the meaning of 27 U.S.C. § 1331, claims brought under it establish general jurisdiction over the cause.  Sec. Investor Protection Corp. v. Vigman, 764 F.2d 1309, 1316 (9th Cir. 1985).  The relevant jurisdictional question is thus whether the defendant has sufficient contacts with the United States, not the forum state.  See Nelson v. Quimby Island Reclamation Dist. Facilities Corp., 491 F. Supp. 1364, 1378 (N.D. Cal. 1980).  Therefore, if a defendant has minimum contacts with the United States, § 27 of the Exchange Act confers personal jurisdiction over the defendant in any federal district court.  Vigman, 764 F.2d at 1316.  Because the specially-appearing Defendants

**ORDER ON MTNS TO**
**DISMISS/PARTIAL S-J - 14**

had contacts within the boundaries of the United States, the "minimum contacts" required to satisfy the federal court's exercise of power over them are present.  See Mariash v. Morrill, 496 F.2d 1138, 1143 (C.A.N.Y. 1974) (where the defendants "reside within the territorial boundaries of the United States, the 'minimal contacts' [required] are present").

Despite the existence of personal jurisdiction over the Hayes and Morley defendants, Plaintiff still fails to state a claim against either entity upon which relief may be granted.  At most Plaintiff has attempted to allege a conspiracy claim against them.  Although in a conspiracy allegation a plaintiff need only "set out a generalized statement of facts from which [a] defendant will be able to frame a responsive pleading," he must "set out more than mere bald allegations of a claim."  Vigman, 764 F.2d at 1318.  Defendant fails to do this as to the Morley or Hayes entities.

Swartz's only mention of Morley is that it is the "sole member" of Presidio Advisory Services and "is a company of unknown origin."  (TAC ¶107.)  Likewise, the sole reference to Hayes is that it is a corporation of "unknown origin" and a member of Presidio Growth.  (TAC ¶ 108.)   Plaintiff bases his assertion of federal jurisdiction over the entities only on their alleged participation in the marketing of BLIPS in Washington.  (TAC ¶ 22.)  Plaintiff fails to assert that either entity committed any wrongdoing or what these entities' respective roles in the alleged scheme were.  Merely lumping the Hayes and Morley defendants together with "Presidio" is insufficient, as this Court and the Ninth Circuit have previously pointed out.  The motion to dismiss Hayes and Morley will be granted.

The general jurisdiction provision of the Exchange Act cited *supra* is sufficient to defeat the motions to dismiss Defendants Pfaff and Larson for lack of personal jurisdiction.  There is no allegation that they are not United States residents and thus "minimal contacts" for purposes of federal securities fraud jurisdiction are present.  It is not clear from Presidio's briefing which portions of their Pfaff-Larson arguments (Mtn to Dismiss, pp. 17-21) are directed at the jurisdiction issue and which are

**ORDER ON MTNS TO DISMISS/PARTIAL S-J - 15**

directed to dismissal on 12(b)(6) grounds.[4]  It is the Court's intention, with respect to these two

individual Defendants, to call for a further round of briefing on the issue of dismissal for failure to state

a claim upon which relief may be granted.

Within one week from the filing of this order, defense counsel for Presidio are directed to file

a six-page brief addressing the issue of 12(b)(6) dismissal relative to Pfaff and Larson.  This briefing

may not include any "me, too" arguments (joining in the arguments or analysis of any of the other

defense briefing) but must state concisely the grounds on which Defendants Pfaff and Larson contend

that Plaintiff has failed to state a cause of action against them.  Plaintiff's response, which is also

limited to six pages, is due seven days after the defense brief is filed and must likewise stand on its own

merits without reference to previous briefing.  There will be no reply brief.

In their briefing, the parties are directed to respond to a question which they were invited to

address at oral argument but failed to do: namely, on what basis are these defendants alleged to be

liable in their *individual* capacities (as opposed to simply being representatives of the various Presidio

entities)?

### B.  Defendant Buss

Plaintiff acknowledges that Buss is not subject to general jurisdiction (which requires

"substantial and continuous contacts," but attempts to establish specific jurisdiction over this defendant

individually on two separate but related theories.

The elements which must be satisfied to assert specific jurisdiction require positive answers to

the following questions:

---

[4]  By way of example, in the section entitled "Plaintiff Does Not Allege Any Wrongful Acts by the Specially Appearing Defendants" – which suggests a 12(b)(6) analysis – Presidio argues that "[w]ith respect to the individual defendants John Larson and Robert Pfaff,... none [of Plaintiff's factual allegations] has anything to do with Washington State or Swartz" (Mtn to Dismiss, p. 17), which suggests an argument aimed at the jurisdictional issue.

**ORDER ON MTNS TO
DISMISS/PARTIAL S-J - 16**

I. Did Buss "purposely avail" himself of the privilege of doing business in this jurisdiction?
II. Do Plaintiff's injuries "arise out of or relate to" Buss's activities?
III. Would the assertion of jurisdiction "offend traditional notions of fair play and substantial justice"?

Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-78 (1985).

Plaintiff's attempt to establish personal jurisdiction over Defendant Buss suffers from two problems. The first is that, although he states "on information and belief" that the Presidio entities are "mere shell companies" (TAC ¶ 118), Plaintiff makes no allegations that the Presidio Defendants are the "alter ego" of Buss, nor does he make any arguments or requests for the Court to pierce the corporate veil and hold Buss personally liable for the actions of the Presidio Defendants.

Second, even if Plaintiff had plead "alter ego" liability, his allegations regarding Buss's actions do not satisfy the threshold requirements for personal jurisdiction. The communications which Plaintiff cites in the TAC do not support his theory that Buss "availed" himself of the privilege of doing business in Washington by making "fraudulent inducements" from California to Washington (Plaintiff's first theory of personal jurisdiction). The documents are more accurately described as "ministerial communications" – transmitting transactional documents for Plaintiff's records, often merely copying him on communications with Deutsche Bank. Moreover, almost all of them post-date Plaintiff's decision to invest in the BLIPS scheme and thus cannot be characterized as "inducements" of any kind (the "smoking gun" letter which Plaintiff cites – an October 7, 1999 letter to Gascoyne/Attn: T.C. Swartz – merely says "*In the event you choose to invest* in [Longs], please sign the enclosed wire transfer instructions..."; Swartz Decl., Ex. 5; emphasis supplied). The causal relationship between Buss's activities and Plaintiff's injuries is missing. Although Plaintiff clearly wants to tie Buss into BLIPS as a "control person," there are no allegations in the TAC which allege that Buss developed, marketed or promoted the product. So Plaintiff's first "personal jurisdiction"

**ORDER ON MTNS TO DISMISS/PARTIAL S-J - 17**

theory, that Buss "availed" himself of the privilege of doing business in this forum, is not persuasive.

Plaintiff proposes as an alternate theory that the Court employ the "effects" test enunciated in Calder v. Jones, 465 U.S. 783, 790 (1984), which held that individual defendants' status as employees of a defendant business entity would not insulate them from liability where they had been "primary participants" in the alleged wrongdoing; "i.e., where the individual had 'control of, and direct participation in the alleged activities.'" Wolf Designs, Inc. v. DHR Co., 322 F. Supp. 2d 1065, 1072 (C.D.Cal. 2004).  In those circumstances, the "effects" of the individual's participation within the forum jurisdiction would be measured.[5]

But Plaintiff runs into the same problem as in his "availment" argument – nothing in his allegations or in his documentary evidence establishes Buss as a "primary participant," a person in control of and directly participating in the fraudulent inducement at the heart of this complaint. Plaintiff is reduced to innuendo[6] in his effort to portray Buss as a primary participant, but the evidence and the allegations contained in the TAC simply do not support this characterization.

Plaintiff has failed to satisfy the elements of specific jurisdiction with regard to this individual defendant, and Defendant Buss is entitled to have the complaint against him dismissed on that ground.

Regarding the actual claims alleged against him in the TAC, Defendant Buss both joins in the motions of his co-defendants and briefly lists some arguments of his own regarding the causes of

---

[5] Buss attempts to attack this alternate theory on the grounds that it has been confined to certain kinds of tort allegations and that the 9th Circuit analyzes cases arising out of contractual relationships under a "purposeful availment" standard. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004); Dial Up Svcs v. Oregon, 2007 US Dist. LEXIS 89679 (D.Ariz. Nov. 27 2007).  This is not a persuasive counter-argument in a complaint with combined contract and tort allegations.

[6] E.g., alluding to Buss's qualifications as a Certified Public Accountant when there is no indication he functioned in that capacity; referring to "Mr. Buss' falsely prepared K-1" when Buss isn't alleged to have prepared that document.  (Pltf.  Response to Buss Mtn, pp. 8, 17.)

**ORDER ON MTNS TO**
**DISMISS/PARTIAL S-J - 18**

action to which he has been joined.  Having dismissed him from this suit on the grounds of lack of

personal jurisdiction, the Court does not feel compelled to analyze the arguments on each individual

claim vis a vis this defendant, with one exception.

As will become evident from the "Securities Exchange Act Claims" § V. E., *infra*, this Court

finds that Plaintiff's federal securities claims under 10(b) and Rule 10b-5 against the Presidio

Defendants survive the 12(b)(6) challenge.  Jurisdiction under this federal statutory scheme is

established generally, not specifically, and it is required only that a defendant have sufficient contacts

with the United States (not the forum state) for a court to exercise jurisdiction.  <u>Vigman</u>, 764 F.2d at

1316.

While the Court has no doubt that Defendant Buss has sufficient contacts with the United

States to warrant the exercise of jurisdiction concerning this particular claim, this does little to avail

Plaintiff of the relief he requests.  As will be discussed in greater detail *infra*, there is a heightened

pleading standard regarding allegations of fraud under the federal securities regulations.  A plaintiff

alleging that a defendant made a false or misleading statement in connection with the sale of a security

must "(1) specify each statement alleged to have been misleading and the reason or reasons why the

statement is misleading" and (2) "state with particularity facts giving rise to a strong inference that the

defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(1)-(2).  Plaintiff has identified

some documents to which Buss's signature was affixed, but he has failed to plead with any

particularity why the documents are misleading or state any facts which infer that Buss acted with the

requisite scienter.  Additionally, he has failed to allege that any action by Buss was instrumental in

inducing him to enter into the investment scheme.  Defendant Buss's 12(b)(6) motion with regard to

the federal securities claim will therefore be granted.

Concerning the remainder of the claims against this defendant, the Court finds, for the same

reasons cited *infra* for the dismissal of Plaintiff's causes of action against the other defendants (particularly Defendant Makov), that Plaintiff has also failed to adequately allege any of his claims against Defendant Buss as an individual.

V.  Defendants' 12(b)(6) Motions to Dismiss/Motion for Summary Judgment

The Court will now turn to a claim-by-claim analysis of Plaintiff's TAC and the remaining defendants.[7]

A.  *Claim 1: Conspiracy*

Plaintiff alleges that all the defendants were partners in a joint venture conspiracy to design, promote, market, and sell to investors, including Plaintiff, "abusive" tax shelters such as BLIPS. Under Washington law, an action for civil conspiracy lies "where there is an agreement by two or more persons to accomplish some purpose, not in itself unlawful, by unlawful means." Sterling Business Forms, Inc. v. Thorpe, 82 Wn.App. 446, 451 (1996) (citations omitted).  Plaintiff must show this by clear and convincing evidence, and showing "[m]ere suspicion or commonality of interests is insufficient to prove a conspiracy." All Star Gas, Inc., of Washington v. Bechard, 100 Wn.App. 732, 740 (2000) (citations and internal quotation marks omitted).  When the object of the alleged conspiracy is fraudulent, the plaintiff must meet the heightened pleading requirements under F.R.C.P. 9(b).  See Swartz II.  The liability of co-conspirators is joint and several, making each defendant liable for acts  committed by any of the parties in furtherance of the common design.  Sterling Business, 82 Wn.App. at 454.

Plaintiff's conspiracy claim as to the Presidio Defendants survives.  Although Plaintiff fails to

---

[7]  Wherever used, the terms "Presidio" or "Presidio Defendants" encompass the following parties to the suit: Presidio Advisory Services, LLC; Presidio Growth, LLC; Presidio Resources, LLC; Presidio Volatility Management; and Presidio Financial Group.

point to an actual agreement between Presidio and any other defendant to defraud Swartz, this is not fatal to his civil conspiracy claim.  Washington courts hold that because the evidence of the conspiracy is typically in control of the alleged conspirators, "conspiracy is usually susceptible of no other proof than that of circumstantial evidence." Sterling Business, Id. at 453-54 (citations omitted); see also Lyle v. Haskins, 24 Wn.2d 883, 899 (1946) (holding that it is sufficient to show proof of concert of action or other circumstances giving rise to a "natural inference" that the acts were done pursuant to a common design.)

      In the case of Presidio, the TAC and the Senate Report it references provide adequate circumstantial evidence to properly allege that Presidio participated in a conspiracy to defraud Swartz.  The pleading indicates that Presidio and its agents developed the BLIPS investment program and participated in the marketing, and implementation of 186 BLIPS transactions related to 186 KPMG clients.  The Engagement Letter from KPMG expressly references and explains Presidio's role in the investment scheme.  Plaintiff adequately pleads that several of the terms of the agreements between Swartz and Presidio were false, and the meetings cited by Swartz in April and May of 1999, prior to the onset of the disputed transactions, indicate that both KPMG and Deutsche Bank were aware that the terms presented to Swartz were false.  These pleadings provide circumstantial evidence that a conspiracy to defraud Swartz existed.

      The Ninth Circuit ruled that in order to plead a conspiracy claim, Plaintiff must explain in sufficient detail the roles of each defendant in the alleged conspiracy to defraud.  See Swartz II, 476 F.3d at 765.  This Court finds that he has accomplished that in regards to Presidio in the TAC, describing in detail the role Presidio and some of its entities played in the investment scheme.  Reviewing the TAC in the light most favorable to Plaintiff, he has alleged sufficient facts for a finder of fact to conclude that Presidio may have participated in the alleged conspiracy; therefore, Plaintiff's

civil conspiracy claim against the Presidio Defendants will not be dismissed on 12(b)(6) grounds.

Plaintiff's claim for conspiracy against Defendant Makov fails because it does not meet the heightened pleading requirements of FRCP 9(b).  Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1107 (9th Cir. 2003) (claim for conspiracy to commit fraud subject to FRCP 9(b) pleading requirements).  FRCP 9(b) requires that Plaintiff allege "the who, what, when, where, and how" of the misconduct charged.  Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997).  Plaintiff has failed to identify any allegedly false statements made to Plaintiff by Makov and has offered no specific allegations detailing Makov's contribution to the conspiracy.  The particularity requirements for an averment of fraud cannot be met by general allegations concerning misconduct of the "Presidio Defendants."  Swartz II, 476 F.3d at 764-765 ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.") (citation and internal quotation marks omitted).   Defendant Makov is entitled to have the conspiracy allegation against him dismissed for failure to state a claim upon which relief can be granted.

*B. Claim Two: Fraud/misrepresentation*

Under FRCP 9(b), "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  See Vess, 317 F.3d at 1107.  The Ninth Circuit's Swartz II opinion is replete with warnings to Plaintiff to refrain from general conclusory allegations against "the defendants" in the aggregate "without any stated factual basis."  476 F.3d at 765.

Plaintiff bases his claims of fraud and negligent misrepresentation against Presidio on several alleged misrepresentations contained in the Confidential Memorandum and statements related to Presidio from other defendants.  The primary misrepresentations specific to Presidio include the

**ORDER ON MTNS TO**
**DISMISS/PARTIAL S-J - 22**

statement in the Confidential Memorandum wherein Presidio represents that BLIPS presented a reasonable opportunity to earn a pre-tax profit; Presidio's statement that BLIPS was a 7-year investment plan based on a high interest loan providing leverage; and Presidio's statement that it acted independently from Deutsche Bank.

In the instant complaint, the Court finds that Plaintiff pleads sufficient facts to support a fraud claim against Presidio.  Swartz pleads with particularity that Presidio misrepresented the viability of the BLIPS investment program, the duration of the program, the role of Deutsche Bank's loan and how much control DB exercised in the program, and the calculation of fees.  (TAC ¶¶ 15, 132, 207, 210, 214, 232, 233, 236, 237, 266.)

The Court finds that Plaintiff's TAC provides specific representations from Presidio alleged to be false; when they were made, and to whom; reasons why the alleged misrepresentations were false; and the factual circumstances in which they were made.

The Presidio Defendants also attack the adequacy of Plaintiff's fraud-based pleadings on the ground that he is unable to demonstrate the requisite element of reliance.  They make the argument that express disclaimers within the agreements with Presidio preclude this Court from finding reasonable reliance on their alleged misrepresentations.  Presidio argues that these "express disclaimers" of reliance on Presidio for tax or investment advice, coupled with Swartz's affirmative representations as to his business sophistication and reliance on his own independent advisers, preclude this Court from finding reasonable reliance as a matter of law.

In the Confidential Memorandum, there were provisions that stated that nobody involved in the Longs Fund was providing any tax advice and that prospective investors "should consult their own tax advisers." (Presidio Mtn., Bauer Decl., Ex. A at 17.)  The Limited Liability Agreement stated, under "Investment Representations," that the signing member has had an opportunity to question the

**ORDER ON MTNS TO DISMISS/PARTIAL S-J - 23**

Managing Member and that the signer has sufficient experience to "evaluate the merits and risks" involved in investing into Longs. (Bauer Decl., Ex. B at 11.)[8]

Presidio's arguments regarding the lack of reasonable reliance based on the disclaimers are ultimately unpersuasive.  First, the Ninth Circuit, in reversing this Court on its ruling that Swartz had not shown reasonable reliance in his original fraud claims as a matter of law, cited state case law demonstrating that whether a plaintiff justifiably relied on a party's misrepresentation is an issue of fact which requires consideration of the surrounding circumstances.  Swartz II, 476 F.3d at 762-63 (citations omitted).  This finding, according to the Ninth Circuit, "is necessarily fact-intensive" and involves multiple considerations, including the education level and relative experience level of the plaintiff, and also whether "oral misrepresentations were 'contradicted' by written documents in the representee's possession."  Id.

The disclaimer provisions cited by Presidio fall into the same category as other indicia of unjustified reliance (e.g., the aforementioned IRS Notices and warnings from Plaintiff's accountants Moss Adams):  "While these facts may also undermine Swartz's claim of reasonable reliance, they not do not warrant dismissal under the demanding 12(b)(6) standard."  Swartz II, 476 F.3d at 763.  The Ninth Circuit employs a similar fact-based approach in claims under the Exchange Act, as does the forum state in claims under the Washington State Securities Act (WSSA).  See Stewart v. Estate of

_____

[8]Swartz also signed a Subscription Agreement with Presidio Growth on September 30, 1999 to purchase an interest in the Strategic Investment Fund (Bauer Decl., Ex. C.)  which contained a disclaimer that "[t]he Investor has relied... solely on the information contained in the Confidential Memorandum... and the Limited Liability Agreement, and the Investor is not relying on the Managing Member... with respect to individual and partnership tax and other economic considerations involved in this investment." (Id. at 3-4.) This agreement was not explicitly referenced in the TAC; however, a court may consider a writing referenced in a complaint, but not incorporated into it if the complaint relies on it and its authenticity is unquestioned. Lee, 250 F.3d at 688.  Because Plaintiff bases Presidio's liability on alleged misrepresentations in "oral and written contracts," the Court has considered the contents of the Subscription Agreement in this 12(b)(6) motion.

**ORDER ON MTNS TO DISMISS/PARTIAL S-J - 24**

Steiner, 122 Wn.App. 258, 274 (2004) (holding a non-reliance clause in subscription agreement was not dispositive on the issue of justifiable reliance as a matter of law).

Second, much of Plaintiff's frauds claim against Presidio are based on the terms of the agreements he executed with Presidio and the misrepresentations he alleges that they contained. Swartz is alleging that (1) Presidio charged management fees in a manner that deviated from the express terms of the Confidential Memorandum, and (2) created agreements which misrepresented the manner in which the supposed loan from Deutsche Bank financed the investment pools, issues unrelated to relying on Presidio for tax or legal advice, or relying on any representations extraneous to the agreements themselves. For the above-cited reasons, the Court will not find as a matter of law that Plaintiff cannot adequately plead reliance as an element of his fraud claims.

Plaintiff does not fare so well with his fraud-based claims concerning Defendant Makov. The complaint is utterly lacking in specificity or particularity as regards this defendant. The fraud section of the TAC (¶¶ 91-110) makes no mention of Makov: there is no allegation that this individual made a false statement or misrepresentation, there are only general conclusory allegations that Makov had knowledge of any fraud in the scheme, and there are no allegations that Plaintiff relied on anything that Makov himself represented (or failed to disclose) prior to entering into the transaction which forms the basis of this complaint. Plaintiff's allegations regarding this individual defendant fall far short of the requirements of FRCP 9(b). For these reasons, and for the reasons cited *supra* in the "Conspiracy" section, Defendant Makov is entitled to dismissal of the fraud claim against him.

*C. Claim Three: Breach of fiduciary duty/aiding and abetting breach of a fiduciary duty*

Under Washington law, the "existence of a fiduciary relationship is not simply a matter of 'reposing trust and confidence in the integrity of another… There must be additional circumstances, or a relationship that induce the trusting party to relax the care and vigilance which he

**ORDER ON MTNS TO DISMISS/PARTIAL S-J - 25**

would ordinarily exercise for his own protection.'" <u>Moon v. Phipps</u>, 67 Wn.2d 948, 954 (1966). A fiduciary duty will be found to exist when one party "occupies such a relation to the other party as to justify the latter in expecting that his interests will be cared for[.]" <u>Liebergesell v. Evans</u>, 93 Wn.2d 881, 889-90 (1980) (citation omitted). Whether or not a fiduciary relationship exists is a question of law. <u>Hansen v. Friend</u>, 118 Wn.2d 476, 479 (1992). Whether or not a party has breached a fiduciary duty owed to another is generally a question of fact. <u>Valentine v. Dept. of Licensing</u>, 77 Wn. App. 838, 846 (1995).

Presidio's arguments that Presidio was not a fiduciary to Swartz because financial advisers are not fiduciaries and because they dealt with each other at arm's length are unpersuasive. First, financial advisers can be fiduciaries. Presidio Growth, as alleged in the TAC (¶ 346), is a registered investment advisor under the Investment Advisers Act of 1940, 15 U.S.C.S. § 80(b)-2(11). The Supreme Court explicitly recognized that financial advisers are fiduciaries, who have an "affirmative duty of 'utmost good faith, and full and fair disclosure of all material facts," as well as the affirmative obligation 'to employ reasonable care to avoid misleading [their] clients.'" <u>S.E.C. v. Capital Gains Research Bureau</u>, 375 U.S. 180, 194 (1963) (citations omitted).

Second, the allegations in the TAC do more than merely allege that Swartz had "trust and confidence" in Presidio in executing their contractual obligations. As the Managing Member of Longs, Presidio represented in the Limited Liability Agreement that "the overall management and control of the business and affairs of the Company (Longs) shall be vested solely" in them, and that "[a]ll matters concerning the valuation of securities and other assets and the liabilities of the Company, the allocation of profits, gains and losses among the Members… shall be determined" by them. (<u>See</u> Bauer Decl., Ex. B at 20.) The terms of the agreements between Swartz and Presidio suggest more than an "arm's length" relationship. Even if the terms of the agreements between the parties did not create a fiduciary

duty on their face, the material facts Presidio allegedly concealed give rise to fiduciary-like duties.  See

Tokarz v. Frontier Federal Sav. And Loan Ass'n, 33 Wn.App. 456, 459 (1982) (one with special

knowledge of material facts unknown to the other party may have duty to speak).

Presidio also argues that Swartz signed an express understanding within the Limited Liability

Agreement with Presidio that none of the members of Longs would be a fiduciary to the others,

enforceable by Delaware law:

> No member shall be a fiduciary of or have any fiduciary obligations to the other
> Members in connection with the Company or this Agreement or such Member's
> performance of its obligations under this Agreement, and each Member hereby waives
> to the fullest extent permitted by applicable law any rights it may have to claim any
> breach of fiduciary obligations under this Agreement or in connection with the
> Company.

Bauer Decl., Ex. B at 23, § 5.06(a).

Even assuming Delaware law applies (and Plaintiff does not argue that it does not), that same

section of Delaware law cited by Presidio provides that a limited liability company agreement "may not

limit or eliminate liability for any act or omission that constitutes a bad faith violation of the implied

contractual covenant of good faith and fair dealing."  DLLCA § 18-1101(c).  Also, it is unclear under

Delaware law whether provisions seeking to eliminate all fiduciary duties are valid when a member

manages the entity in an illegal fashion.  See Metro Comm'cn Corp. BVI v. Advanced Mobilecomm

Techs., Inc., 854 A.2d 121, 131 (Del. Ch. 2004).

Taking the facts alleged in the TAC as true for purposes of the 12(b)(6) motion, Plaintiff has

adequately plead bad faith acts by Presidio in advancing an illegal tax shelter scheme and

misrepresenting several of the key functions of the scheme.  Thus, these defendants are not shielded by

the disclaimer of fiduciary relationship to Swartz (as Gascoyne) in the Limited Liability Agreement.

This Court finds that Plaintiff has plead the elements of a breach of fiduciary duty claim against

Presidio sufficiently to avoid dismissal pursuant to 12(b)(6).

**ORDER ON MTNS TO
DISMISS/PARTIAL S-J - 27**

Plaintiff's breach of fiduciary duty claim as regards Defendant Makov will be  dismissed for failure to plead circumstances that give rise to a fiduciary relationship.  Plaintiff does not allege that he had any relationship with Makov as an individual.  Even a theory that Makov aided and abetted a breach of fiduciary duty cannot survive without allegations that this defendant had knowledge of a primary tortfeasor's intent to breach and substantially assisted that breach.  See Rest. 2d of Torts, § 876; see also Chem-Age Indus. v. Glover, 2002 SD 122, P45 (S.D. 2002).   Plaintiff's TAC contains no such allegations.

### D.  Claim Four: Constructive trust

Under the remedy of constructive trust, "[w]hen a property has been acquired in such circumstances that the holder of legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee." Ellis v. Schwank, 37 Wn.2d 286, 289 (1950) (citation and internal quotation marks omitted).  Notions of equity allow a court to impress upon a party a constructive trust in favor of the wronged party, who may reclaim their property from one that used fraud, misrepresentation, or otherwise similar circumstances to acquire it.  Bangasser & Associates, Inc. v. Hedges, 58 Wn.2d 514, 516-17 (1961).  Under Washington law, constructive trust is an equitable remedy imposed by the court at law, principally to prevent unjust enrichment.  Thor v. McDearmid, 63 Wn.App. 193, 207 (1991) (citation omitted).

Plaintiff alleges that all Defendants have acquired Plaintiff's property as a result of their acts and omissions and that they are holding the property in "constructive trust." (TAC ¶¶ 359-61.)  Plaintiff also argues that all Defendants are in "violation" of a constructive trust.  (TAC ¶ 358.)  Several defendants have put forth the argument that constructive trust is an equitable remedy, not a cause of action.  Plaintiff has failed to respond to these arguments.  The Court's own research has failed to uncover any authority which would permit Plaintiff to assert an equitable remedy as a cause of

**ORDER ON MTNS TO DISMISS/PARTIAL S-J - 28**

action.  In the absence of any argument by Plaintiff to the contrary, the claim will be dismissed against all remaining defendants.

E.  Claim Five: Securities Exchange Act violations

Plaintiff argues that each of the Defendants "have violated and are each primary violators of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder."  (TAC ¶¶ 362-373.)

Presidio argues that Plaintiff has failed to meet the heightened pleading standard under the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(a) et seq.; that his claim is better characterized as an aiding and abetting claim, which has no private right of action under § 10(b); and that Plaintiff has not adequately alleged loss causation.   Plaintiff's response fails to make any mention of his claims under the Exchange Act except on a personal jurisdiction issue.  (See Pltf. Response to Presidio Mtn at 19.)

Section 10(b) of the Exchange Act forbids the "use or employ, in connection with the purchase or sale of any security…, [of] any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange Commission] may prescribe as necessary[.]"  15 U.S.C. § 78(j)(b).  Rule 10b-5 creates liability to any person who "make[s] any untrue statement of a material fact" or "omit[s] to state a material fact necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading."  17 C.F.R. § 240.10b-5.  To plead a claim under Rule 10b-5, a plaintiff must show (1) a material misrepresentation or omission; (2) made with a wrongful state of mind ("scienter"); (3) in connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation, a causal connection between the material misrepresentation and the loss.  Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 341-42 (2005).

The PSLRA imposes a heightened pleading standard on private actions brought under the Exchange Act. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S.Ct. 2499, 2508 (2007).  If a plaintiff alleges that a defendant made a false or misleading statement, his complaint must "(1) specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading," and (2) "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(1)-(2).

Plaintiff's factual allegations are sufficient to support a § 10(b) claim against Presidio under the Exchange Act.  First, Plaintiff's interest in Longs LLC constitutes a security.  Investment contracts are explicitly listed in the definition of "security" under 15 U.S.C.A. § 78b(A)(1).  An investment contract is defined as (1) an investment of money (2) in a common enterprise (3) with the expectation of profits produced by the efforts of others.  S.E.C. v. W.J. Howey Co., 328 U.S. 293, 298-99 (1946); S.E.C. v. Alliance Leasing Corp., 28 Fed.Appx. 648, 651 (9th Cir. 2002).

Here, the Confidential Memorandum and Limited Liability Agreement expressly indicate that all the parties to the transaction were to pool their resources, including initial capital contributions; that Presidio would act as the Managing Member in Longs, empowered to make all investment decisions; and that the program was intended to produce a profit.  (See Bauer Decl., Ex. A.)

Second, Plaintiff satisfies the pleading requirements of the PSLRA because he identifies each material statement within the Confidential Memorandum that is allegedly false, gives reasons why they are false, and provides supporting facts that form the basis of his allegations.  See "Fraud" § V. B., supra.  Rule 10b-5 requires that an omission or false statement be related to a "material" fact in order to be actionable.  17 C.F.R. § 240.10b-5.  An omitted fact is related to a material fact if there is a "substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information available."  Basic, 485

U.S. at 231-32 (citations omitted).  The facts alleged, that the chance for a return profit from the

BLIPS program was "remote" and that the length of the loan was only 60 days as opposed to 7 years,

were material.  Further, Plaintiff provides facts that, assuming their truth for purposes of this motion,

demonstrate that Presidio had actual knowledge that what it represented in its Confidential

Memorandum and Limited Liability Agreement were false.  Again, see "Fraud" § V. B., *supra*.

Third, Plaintiff has alleged that he relied on the representations in the Confidential

Memorandum; in fact, in the Subscription Agreement, Swartz expressly represented that he was

relying on the terms of the Confidential Memorandum and Limited Liability Agreement in deciding to

invest in Longs.[9]  Further, he adequately alleges that he lost over a half a million dollars to the Presidio

Defendants in fees charged under allegedly false pretenses.  The Court finds that Plaintiff has

adequately plead reliance, loss, and causation based on the allegedly false statements of Presidio.

Plaintiff's claim against Presidio under § 10(b) will not be dismissed on 12(b)(6) grounds.

Plaintiff's § 20(a) claim is unnecessary as applied to the Presidio Defendants, since they are

properly alleged to be a primary violator under § 10(b) and Rule 10b-5.  Section 20(a) states in

relevant part:

> Every person who, directly or indirectly, controls any person liable under any provision
> of this chapter or of any rule or regulation thereunder shall also be liable jointly and
> severally with and to the same extent as such controlled person to any person to whom
> such controlled person is liable[.]

To prevail on a claim under § 20(a), Plaintiff must show a violation of § 10(b) or Rule 10b-5 by more

than one of the defendants.  Lipton v. Pathogenesis Corp., 284 F.3d 1027, 1035 n.15 (2002).  As

discussed *infra*, Plaintiff has failed to state a claim against any of the other defendants under § 10(b),

so Presidio necessarily could not be a controlling party over any other primary violator.  The federal

---

[9]  The Presidio Defendants' argument that Plaintiff was not entitled to plead reliance based on the disclaimer
provisions of their agreements has been addressed *supra* in the "Fraud" section as well.

securities violation claimed under § 20(a) against Presidio will be dismissed for failure to state a claim upon which relief can be granted.

Plaintiff also alleges violations of §§ 12 and 15 of the Exchange Act.  Sections 12 and 15 of the Exchange Act of 1934 are concerned with the registration of securities, which Plaintiff has unquestionably failed to plead against any of the defendants.  In fact, it is unlikely he even meant to.  More likely, Plaintiff intended to plead the liability of the defendants under §§ 12 and 15 of the 1933 Securities Act, which concern misrepresentations in prospectuses.  See 15 U.S.C.A. § 78l et seq.  Plaintiff does not respond to the arguments that he plead under the wrong statute, leaving the Court to speculate about his intentions.  However, even if Plaintiff did intend to plead liability under §§ 12 and 15 of the Exchange Act, those claims would fail as well – there is no private cause of action under § 15, 15 U.S.C.A. § 78o, recognized by the Ninth Circuit (see S.E.C. v. The Seaboard Corp., 677 F.2d 1301, 1313-14 (9th Cir. 1982) and Plaintiff fails to plead in what manner Presidio violated § 12.

The only way for Plaintiff to plead facts sufficient to support a cause of action for federal securities violations against Defendant Makov as an individual is to adequately allege that he was a "control person" in the transaction.  Swartz has not adequately plead control person liability.  These claims require a showing that : (1) Presidio committed a primary violation of securities laws; and (2) Makov exercised actual power or control over Presidio.  Howard v. Everex Sys., 228 F.3d 1057, 1065 (9th Cir. 2000); see also Hines v. Data Line Sys., 114 Wn.2d 127, 135-37 (Wash. 1990).  Whether a defendant is a control person is an intensely factual question, and a plaintiff will survive a motion to dismiss on allegations that individual defendants, by virtue of their executive and managerial positions, could and did control and influence the company.  See In re Cylink Secs. Litig., 178 F. Supp. 2d 1077, 1089 (N.D. Cal.

2001) (allegations "that the individual defendants, by virtue of their executive and managerial positions had the power to control and influence [Cylink], which they exercised" are "sufficient to support an inference that the individual defendants controlled Cylink and its operations"); see also In re Adaptive Broadband Sec. Litig., 2002 U.S. Dist. LEXIS 5887, 57-59 (N.D. Cal. Apr. 2, 2002) ("allegations that the Individual Defendants held the highest offices in the corporation, spoke frequently on its behalf, and made key decisions in how to present its financial results are sufficient "); Marks v. Simulation Sciences, 2000 U.S. Dist. LEXIS 4536 (C.D. Cal. Feb. 28, 2000) ("general allegations about the titles of these defendants and their day-to-day control over SimSci affairs" are sufficient); In re Metawave Communs. Corp. Secs. Litig., 298 F. Supp. 2d 1056, 1091 (W.D. Wash. 2003) ("At the motion to dismiss stage, general allegations concerning an individual's title and responsibilities are sufficient to establish control.").

Plaintiff's allegations fail to meet this standard. The TAC offers only the general (and factually unsupported) conclusion that Makov controlled Presidio, stating that "Presidio, [etc.] are merely shell companies, owned, operated and controlled by Defendants Buss, Larson and Makov." (TAC ¶¶ 117, 118.) Plaintiff does not offer any factual allegations that could support a claim for control person liability. The assertion that Presidio hired Makov "[t]o develop the [BLIPS] idea" and "to provide economic and investment expertise" is not an allegation of control. (TAC ¶ 205.) In an attempt to correct this deficiency, Plaintiff asks the Court to take judicial notice of Presidio Growth LLC's Form ADV, which listed Makov's job title as an employee of Presidio Growth LLC and Presidio Advisory Services, Inc. (See Pltf Response to Makov Mtn, Swartz. Decl., Ex. 37.) The Court has no authority to take judicial notice of the filing because Plaintiff has failed to establish that the document satisfies the

1   requirements of FRE 201(b); i.e., that it is "generally known within the territorial jurisdiction of

2   the trial court or. . . capable of accurate and ready determination by resort to sources whose

3   accuracy cannot reasonably be questioned."  The TAC has insufficiently alleged control person

4   liability and the Exchange Act Rule 10b-5 and 20(a) claims against this individual defendant are

5   dismissed.  For the identical reasons cited *supra*, the §§ 12 and 15 claims are dismissed as well.

6   *F.  Claim Six: Investment Advisers Act*

7       The anti-fraud provision in the Investment Advisers Act ("IAA") provides in part that:

8               It shall be unlawful for any investment adviser…[to] (1) to employ any device,
9               scheme, artifice to defraud any client or prospective client; (2) to engage in
                any…course of business which operates as a fraud or deceit upon any client or
10              prospective client;…(4) to engage in any act, practice, or course of business which
                is fraudulent, deceptive, or manipulative[.]"
11

12      Plaintiff alleges that Presidio Growth is a registered investment advisor under the Registered

13  Investment Advisers Act of 1940 and that they, with the other defendants, "are liable jointly

14  and severally… in violation of 15 USCA § 80b-6(1), (2), and (4)."  (TAC ¶¶ 386-90.)   The

15  Supreme Court explicitly held that there is no right of private action under § 80b-6 of the

16  IAA in <u>Transamerica Mortgage Advisers, Inc. (TAMA) v. Lewis</u>, 444 U.S. 11, 24 (1979).

17  Only the Securities and Exchange Commission has the authority to bring an action to enjoin

18  the fraudulent acts and to enforce compliance with the rules from the IAA.  <u>See</u> 15 U.S.C.A.

19  § 80(b)-9(e).  The Court held that the only provision that carries an implied right of private

20  action under the IAA is § 80b-15, which is limited to voiding an investment adviser contract

21  that violates § 80b-6, and is not applicable when seeking damages.  <u>TAMA</u>, 444 U.S. at 24-

22  25; <u>see also</u> <u>Washington v. Baezinger</u>, 656 F. Supp. 1176, 1177-78 (N.D. Cal. 1987).  Since

23  Plaintiff has brought his IAA claim under a provision that affords no private right of action,

24  this claim must be dismissed.   Even if Plaintiff was permitted to amend this claim, he has not

25

26  **ORDER ON MTNS TO**
    **DISMISS/PARTIAL S-J - 34**

plead the existence of an investment advisers contract between himself and Presidio (TAC ¶ 148), and failed to respond at oral argument when provided with a question regarding the existence of such a contract.

Defendant Makov asserts his right to dismissal of the IAA claim on identical grounds: nowhere is it alleged that he is an investment adviser. Plaintiff's only response to this is to "incorporate by reference its arguments and legal authorities" in its responsive briefs to the Presidio, DB, Walter Conston and Grant Thornton motions, but this avails Plaintiff nothing, as those pleadings do nothing to remedy the facial deficiency of failure to plead Makov's "investment adviser" status or the existence of an investment advisory contract with this defendant. Makov's motion to dismiss the IAA claim will be granted. <u>See</u> <u>Neely v. Bar Harbor Bankshares</u>, 270 F. Supp. 2d 44, 49 (D. Maine 2004) (a plaintiff pleading an IAA violation must show the existence of adviser contract).

### G.  *Claim Seven: Washington State Securities Act*

Plaintiff alleges that Defendants are liable under the Washington State Securities Act ("WSSA") for violations of

1.      RCW 21.20.010(1)-(3):

> It is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly:
> (1) To employ any device, scheme, or artifice to defraud;
> (2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading.
> (3) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person

2.      RCW 21.20.430, which entitles those injured in violation of the WSSA to sue in law or equity and establishes liability for anyone  who

> directly or indirectly controls a seller. . . liable under [the WSSA], every partner, officer, director or person who occupies a similar status or performs a similar function of such seller or buyer...

> as well as employees, broker-dealers and salespersons.

The WSSA is modeled after the federal securities statute, and Washington courts look to federal law for guidance in interpreting the state legislation.  See Helenius v. Chelius, 131 Wn.App. 421, 448 (2005).  However, the purposes of the WSSA differ from that of the federal securities statutes in that there is a special emphasis on protecting individual investors, and not only the integrity of the market place.  Haberman v. Washington Pub. Power Supply Sys., 109 Wn.2d 107, 125-26 (1987).  The provisions of the Act are therefore interpreted broadly.  Id. at 126.

The Presidio Defendants argue that because Plaintiff signed a disclaimer of reliance in the Subscription Agreement, this claim must fail.  Plaintiff responds generally that the disclaimers are invalid.  Regarding this specific claim, he only recites the applicable statute and states "[i]t is undisputed that the transaction was in connection with the purchase and sale of a security."  (Pltf. Response to Presidio Mtn, p. 15.)   The Court has previously analyzed Presidio's "reliance disclaimer" defense and will not repeat that analysis here. Suffice it to say that the disclaimer provisions do not entitle Presidio to dismissal of this cause of action.

In order to maintain an action under the WSSA, the plaintiff must show the defendant made either an untrue statement of material fact or omitted such a fact in connection with a security transaction and that the defendant was a seller or offeror of the security.  Shinn v. Thrust IV, Inc., 56 Wn.App. 827, 851 (1990); see also Kinney v. Cook, 159 Wn.2d 837, 842

**ORDER ON MTNS TO
DISMISS/PARTIAL S-J - 36**

(2007).  A party qualifies as a seller "if his or her acts were a substantial contributive factor in the sales transaction."  Haberman, 109 Wn.2d at 131.  To determine whether the acts constitute a substantial contributive factor, Washington courts consider: (1) the number of other factors which contribute to the sale and the extent of the effect they have in producing it; (2) whether the defendant's conduct has created a force or series of forces which are in continuous and active operation up to the time of the sale, and (3) lapse of time.  Id. at 131-32.

Plaintiff has sufficiently plead his WSSA claim against Presidio.  Regarding the first element for WSSA liability under RCW 21.20.010, Plaintiff has sufficiently plead that Presidio either made patently false statements in their Confidential Memorandum, or omitted key aspects of the BLIPS loans.  See discussion in "Fraud" § V. B., *supra*.  These allegedly false statements are, if proven, adequate to constitute a violation of RCW 20.010(2) and survive a 12(b)(6) motion to dismiss.  See Kinney, 159 Wn.2d at 842-43 (plaintiff payers of promissory note meet first element by showing holder of promissory note failed to mention he had burdened the corporation with millions in debt).

Plaintiff's TAC satisfies the second element of the WSSA claim against Presidio because the interest in Longs qualifies as a security, and Presidio qualifies as a seller of a security.  In defining a "security," Washington courts mirrors the federal definition of security and applies a "flexible rather than static principle" in order to keep up with the countless "schemes" devised by those who use the money of others.  State v. Pedersen, 122 Wn.App. 759, 764 (2004).  It is a question of law whether an investment scheme constitutes a security.  De Luz Ranchos Inv. Ltd. v. Coldwell Banker & Co., 608 F.2d 1297, 1299-1301 (9th Cir.

**ORDER ON MTNS TO**
**DISMISS/PARTIAL S-J - 37**

1979).  RCW 20.020.005(12) defines security very broadly, and includes any "investment

contract" or "investment of money… in the risk capital of a venture with the expectation of

some valuable benefit to the investor where the investor does not receive the right to exercise

practical and actual control over the managerial decisions of the venture[.]"  See Shinn, 56

Wn.App. at 849 n.5; see also discussion in "Securities Exchange Act" § V. E. supra.

    The Longs investment qualifies as a security, and Plaintiff alleges sufficient

information to qualify Presidio as a "seller" of a security.  Plaintiff's allegations that Presidio

and KPMG approached him about participating in the BLIPS investment program and that

Presidio provided him with a prospectus in their Confidential Memorandum  explaining how

the BLIPS investment program worked, constitutes an adequate pleading of promotional

conduct. Furthermore, Plaintiff's allegations that Presidio was the source of the BLIPS

scheme and "was thoroughly involved in the development, marketing and implementation of

the product"  (TAC ¶ 262) qualifies Presidio as a "seller" under the substantial contributive

factor test.  Haberman, supra.  The Court declines to dismiss the WSSA claim against

Presidio on 12(b)(6) grounds.

    As regards Defendant Makov and the WSSA claim, Plaintiff's TAC is devoid of any

allegations specific to Makov that would suffice to state a claim under RCW 21.20.010(1)-

(3).  Nor are Plaintiff's allegations adequate to state a claim against Makov for a violation of

RCW 21.20.430(3).  While he is unquestionably alleged to be an "officer or director," the

statute requires more than that.  A defendant must "occup[y] a similar status or perform[] a

similar function of [a] seller or buyer. . . or. . . materially aid[] in the transaction," and

Plaintiff has failed to allege sufficient facts to establish Makov as such an individual, in much

**ORDER ON MTNS TO
DISMISS/PARTIAL S-J - 38**

the same way as he failed to adequately allege "control person" liability against Makov in his federal securities pleadings.  <u>See</u> analysis in § V. E., *supra*.  The WSSA claim against Defendant Makov is dismissed.

### H.  Claim Eight: Professional negligence/negligent misrepresentation

i. <u>Professional Negligence</u>

In Washington, a claim for professional negligence exists against a limited group of licensed professionals, such as health care providers, attorneys, real estate professionals, accountants, clergy, and insurance agents.  <u>See</u> <u>Sharbono v. Universal Underwriters Ins. Co.</u> 139 Wn.App. 383 (2007) (insurance agent); <u>see also</u> <u>Hunter v. Knight, Vale & Gregory</u>, 18 Wn.App. 640 (1977) (accountant).  Although Plaintiff alleges in a general, conclusory fashion that "Defendants, and each of them, owed Swartz a duty of care," Plaintiff cites no authority establishing that investment advisers like Presidio can be held liable under a professional negligence theory, nor does he to respond to any of Presidio's arguments for dismissal of this cause of action.  Accordingly, the Court will grant Presido's motion to dismiss this claim pursuant to 12(b)(6).

Regarding Defendant Makov, Plaintiff has also failed to allege that this individual defendant falls within the class of professions intended to be covered by this tort. and it is likewise appropriate to grant his motion to dismiss on 12(b)(6) grounds.

ii. <u>Negligent Misrepresentation</u>

To establish a claim for negligent misrepresentation in Washington, a plaintiff must show that the defendant:

**ORDER ON MTNS TO**
**DISMISS/PARTIAL S-J - 39**

1

2

3

4

> negligently supplied false information the defendant knew, or should
> have known, would guide the plaintiff in making a business decision,
> and that the plaintiff justifiably relied on the false information… [and
> that] the false information was the proximate cause of the claimed
> damages.

5

6

7

8

9

Van Dinter v. Orr, 157 Wn.2d 329, 333 (2006) (citation omitted).  If a party has a duty to

disclose information and fails to do so, that failure can constitute negligent

misrepresentation.  Colonial Imports, Inc. v. Carlton, N.W., Inc., 121 Wn.2d 726, 731-33

(1993).  Normally the duty to disclose unknown material facts exists only when there is a

10

11

12

13

fiduciary relationship between the parties, but can arise when there is a "quasi-fiduciary"

relationship; i.e., where a special relationship of trust and confidence exists and one party is

privy to material facts "not easily discoverable" by the other, or when one party relies on the

specialized knowledge of the other.  Id. at 732.

14

15

16

17

18

19

20

        Although Swartz is a sophisticated businessman, and employed his own independent

accountants and lawyers in his transactions with Presidio, he has sufficiently plead that

Presidio was privy to material facts that were not readily discoverable.  Again, as analyzed in

the "Breach of fiduciary duty" § V. C., *supra*, Plaintiff has alleged sufficient facts to suggest

a duty flowing from Presidio to himself, and that duty can likewise give rise to a claim for

negligent misrepresentation.  The Court denies Presidio's request to dismiss this claim and

permit it to go forward.

21

22

23

24

        For all the reasons cited in the preceding subsection, Plaintiff is found not to have

alleged adequate facts to infer a duty between the individual Makov and himself, and

therefore no claim for negligent misrepresentation will stand against this defendant.

25

**ORDER ON MTNS TO
DISMISS/PARTIAL S-J - 40**

26

1    *I.  Claim Nine: Breach of contract*

2         Plaintiff bases his breach of contract claim on unspecified  "oral and written

3    contracts" to provide him with a variety of services, premised on a breach of the duty of

4    good faith and fair dealing; specifically, Plaintiff alleges that Defendants promised

5    performance they "should have known they could not deliver," and "took advantage of

6    superior knowledge" by failing to disclose information they had a duty to disclose.  (TAC ¶¶

7    412-18.)   In addition to failing to identify which contracts (written or oral) were breached,

8    Plaintiff fails to specify which provisions of those contracts were breached.  His allegations

9    of the nature of the breach are made in the most general and conclusory manner possible,

10   and he fails to specify which defendant breached a contract and in what manner.

11

12        Under Washington law, to bring a cause of action for breach of contract, Plaintiff

13   must establish (1) the existence of a valid and enforceable contract; (2) the rights of the

14   plaintiff and obligations of the defendant under contract; (3) violation of the contract by the

15   defendant; and (4) damages to the plaintiff.  Citoli v. City of Seattle, 115 Wn.App. 459, 476

16   (2002) (citation omitted).

17        The only remaining defendants who actually entered into written agreements with

18   Plaintiff are the Presidio Defendants.  As mentioned *supra*, Plaintiff fails to articulate which

19   contract Presidio breached, or how it breached a contract, and refers only generally to all

20   "Defendants" in his allegations.  Moreover, the gravamen of Plaintiff's claim appears to be

21   that Defendants breached their contracts with Swartz by breaching their fiduciary duties and

22   duties to disclose material information; i.e., Swartz bases his breach of contract claim on the

23   same incidents and theories upon which he bases his fraud and fiduciary duty claims.

24

**ORDER ON MTNS TO**
25   **DISMISS/PARTIAL S-J - 41**

26

Alleging only that a defendant breached its duties of good faith and fair dealing is

inadequate.  See Badgett v. Sec. State Bank, 116 Wn.2d 563, 570 (1991) (no breach of duty

of good faith when "a party simply stands on its rights to require performance of a contract

according to its terms") (citation omitted).  This "reframing" of the claim is not sufficient, as

this Court has previously concluded.  See Swartz I, 401 F. Supp.  2d at 1154 (breach of

contract claim against KPMG fails because only a reframing of a negligence or malpractice

claim).  This ruling is not one of those on which the Ninth Circuit reversed and remanded

this Court.  Plaintiff has done nothing to correct the deficiencies noted over three years ago.

Presidio's motion to dismiss the breach of contract claim is granted.

Defendant Makov has denied that he entered into any contracts with Plaintiff, who

has not responded with evidence or allegations to the contrary.  Makov's motion to dismiss

this cause of action will likewise be granted.

*J.  Claim Ten: Unjust enrichment*

Plaintiff bases his unjust enrichment claim against Presidio on the theory that these

defendants were unjustly enriched by charging management fees and interest for managing

investment programs that had no economic substance.  (TAC ¶ 423.)  Under Washington

law, unjust enrichment is a claim that can be brought when there is an implied contract,

either in fact or in law.  Lynch v. Deaconess Medical Center, 113 Wn.2d 162, 164-65

(1989).  Implied contracts in law, "quasi-contracts," are not contracts at all, but can be

found by a court to provide obligations to prevent unjust enrichment.  Eaton v. Engelcke

Mfg., Inc., 37 Wn.App. 677, 680 (1984) (citation omitted).

Generally, a party to an express contract may not bring an action under an implied

contract "relating to the same matter."  Moses Lake Const. Co., Inc. v. Johnson, 134

Wn.App. 1011, 2006 WL 2147602 *5 (July 27, 2007) (citation omitted).  Plaintiff is not

arguing that he had an implied contract with the Presidio Defendants.  Because he is suing

based on the express terms of the written agreements he signed with them, the unjust

enrichment claim is inappropriate and Presidio's motion to dismiss it will be granted.

Defendant Makov was not in contractual privity with Plaintiff and (as has been

discussed *supra*) Plaintiff has failed to allege sufficient facts to plead that this defendant

owed him a fiduciary (or any other kind of) duty.  Plaintiff has neither plead nor argued the

existence of a quasi-contractual relationship with Makov and therefore no grounds exist

under which to bind him to this cause of action.  Additionally, there is no allegation that any

money or property of Plaintiff's came into Makov's hands.  The unjust enrichment claim

against Makov will be dismissed upon its motion.

### K.  Claim Eleven: Rescission

Plaintiff alleges that "[a]ny and all agreements Swartz entered into in order to

execute the loans and transactions pertaining to the investment program were procured by

fraud and overreaching" and "Plaintiff is entitled to rescind all agreements entered into with

the Defendants pertaining to any of the investment program transactions."  (TAC ¶¶ 427-

30.)

The Presidio Defendants argue that rescission is only a remedy and not a cause of

action (citing Zola v. Gordon, 685 F. Supp.  354, 374 (S.D.N.Y., 1988)), and that a plaintiff

may not seek to both repudiate the contract and collect damages for its breach in the same

cause of action.  "A party induced to enter into a contract by fraud or misrepresentation

**ORDER ON MTNS TO**
**DISMISS/PARTIAL S-J - 43**

must make a choice; the party may either elect to accept the situation created by the fraud and seek to recover his damages or he may elect to repudiate the transaction and seek to be returned to the status quo," but "as a general rule. . . the defrauded party cannot both rescind and maintain an action for deceit."  Ballow Brasted O'Brien and Rusin P.C. v. Logan, 435 F.3d 235, 238 (2nd Cir. 2006).

Plaintiff fails to respond to Defendants' arguments against the rescission claim except to argue that there is a private cause of action for rescission for contracts in violation of the IAA under 15 U.S.C.A § 80b-6.  (See Pltf. Response to Presidio Mtn, p. 13.)  As discussed supra, there is no private cause of action under § 80b-6 except for the limited private remedy of rescission under § 80b-15.  See discussion in "IAA" § V. F., supra. Plaintiff's TAC does not cite to this section of the statute at all, and therefore his own complaint does not support his argument.

Additionally, in order to bring such an action, there must be an existing investment advisor contract between the parties.  See Neely v. Bar Harbor Bankshares, 270 F. Supp. 2d 44, 49 (D. Me. 2003).  The TAC states that "[a]s of October 1, 1999, Gascoyne (Swartz) had not entered into an advisory contract with Presidio Advisory Services.  (TAC ¶ 148.) (emphasis added).  The disputed transactions with Presidio occurred prior to this date.  Although the TAC repeatedly refers to Presidio Growth as a registered financial adviser, and makes statements that "Presidio Defendants were employed by Plaintiff in their capacities as 'registered investment advisers'" (TAC ¶ 344), nowhere does Plaintiff plead facts indicating the existence of an investment adviser contract between him and Presidio Growth.  For all the foregoing reasons, his rescission claim against Presidio will be

**ORDER ON MTNS TO DISMISS/PARTIAL S-J - 44**

1    dismissed pursuant to their motion.

2        Plaintiff's rescission claim against both Defendant Makov suffers from the same

3    defect: he alleges no contract between himself and this individual defendant.  Nor does he

4    respond to Makov's argument pointing this out.  The Court will grant these parties' request

5    to dismiss the rescission claim alleged against him.

6    _L.  Claim Twelve: Washington Criminal Profiteering Act [RCW 9A.82.010(8)]_

7        As enacted in 1985, the Criminal Profiteering Act ("CPA") contained a 10-year

8    "sunset clause" that automatically repealed the Act on July 1, 1995.  Plaintiff does not

9    dispute that the CPA was not re-enacted until May 9, 2001 and that, between July 1, 1995

10   and May 9, 2001, the CPA was no in existence.  All of the events concerning the BLIPS

11   transactions took place within this time and all defendants argue that, as a result, the CPA

12   was not in effect at the time these causes of action arose.

13       Plaintiff defends this claim with the allegation that, as late as July 2005, Defendant

14   Makov was perjuring himself before the U.S. Senate in furtherance of the conspiracy, well

15   within the re-activated period of the CPA.  This argument is not persuasive.  Plaintiff cannot

16   create an ongoing endless conspiracy out of post-fraud coverup activity; the attempt ignores

17   the long-standing rule of Grunewald v. United States, 353 U.S. 391 (1957):

18           Acts of covering up, even though done in the context of a mutually
             understood need for secrecy, cannot themselves constitute proof that
19           concealment of the crime after its commission was part of the initial
             agreement among the conspirators. . .  Sanctioning [this] theory would for all
20           practical purposes wipe out the statute of limitations in conspiracy cases. . .

21   Id. at 402; see also U.S. v. Magluta, 418 F.3d 1166, 1178-79 (11th Cir. 2005).

22       The acts which comprise the alleged conspiracy were concluded prior to the re-

23   **ORDER ON MTNS TO**
     **DISMISS/PARTIAL S-J - 45**

1    enactment of the CPA; the statute was not in effect at the time of the events comprising the

2    causes of action in the TAC and those claims will be dismissed against all defendants.

3    VI.  Amendment would be futile and wasteful

4           The remaining issue concerning the motions to dismiss pursuant to FRCP 12(b)(6) is

5    whether the Court should grant Plaintiff leave to amend his complaint yet again in a further

6    attempt to correct the deficiencies noted in the preceding 45 pages.   If further amendment

7    would be futile, the Court may order dismissal with prejudice.  Moreno v. State of

8    California, 25 F. Supp. 2d 1060, 1062 (N.D. Cal. 1998).  A trial court has considerable

9    discretion to grant or deny leave to amend, but that discretion "must be guided by the

10   command of Fed. R. Civ. P. 15(a), which provides that 'leave shall be freely given when

11   justice so requires.'"  Allen v. City of Beverly Hills, 911 F.2d 367, 373 (9th Cir. 1990)

12   (citation omitted).  The Court finds not only that further amendment of this complaint would

13   be futile, but that the dictates of justice and judicial economy require that this merry-go-

14   round of re-wording, re-fashioning and reinventing the nature of this litigation be halted.

15

16          The discretion of this Court to grant or deny leave to amend a complaint is

17   "particularly broad where plaintiff has previously amended the complaint."  Allen, 911 F.2d

18   at 373 (citation omitted); see also Mir v. Fosburg, 646 F.2d 342, 347 (9th Cir. 1980) ("[A]

19   district court has broad discretion to grant or deny leave to amend, particularly where the

20   court has already given a plaintiff one or more opportunities to amend his complaint to

21   allege federal claims.")

22          One of the factors to consider is the existence of "repeated failure to cure

23   deficiencies by amendments previously allowed."  Zochlinski v. University of California,

24

25   **ORDER ON MTNS TO**
     **DISMISS/PARTIAL S-J - 46**

26

2006 WL 2417649 *5 (E.D.Cal. 2005.)   This is Plaintiff's fourth version of his complaint,

filed over four years after his original complaint.  See Dumas v. Kipp, 90 F.3d 386, 393 (9th

Cir. 1996) (holding that dismissal without leave to amend was appropriate when the plaintiff

had filed four complaints and yet continued to allege insufficient facts).

    Further, Plaintiff has been given specific instruction by both this Court and the Ninth

Circuit on how to properly meet his pleading burden.  See Swartz II, 476 F.3d at 765

(allowing Plaintiff to replead conspiracy and fraud claims, but holding that his conclusory

allegations "without any stated factual basis are insufficient as a matter of law.") Despite a

further opportunity permitted by the Ninth Circuit, Plaintiff failed to plead with particularity

or state a claim against most defendants, in addition to making claims under erroneous or

inactive statutes.  See Zochlinski, 2005 WL 2417649 at *6 (holding that granting leave to

amend would be futile because "[p]laintiff has demonstrated time and again his inability to

cure deficiencies in his complaints despite ample opportunity [and] specific instruction").

    In addition to failing to plead with particularity, Plaintiff has repeatedly demonstrated

an inability to plead with simplicity and clarity.  Despite the clear mandate of FRCP 8(a)(2)

("A pleading that states a claim for relief must contain... a short and plain statement of the

claim showing that the pleader is entitled to relief"), Plaintiff responded to the Ninth

Circuit's guidance with a 133-page, 437-paragraph complaint adding a multiplicity of new

defendants and causes of action and comprised of a modicum of factual allegation floating

on a sea of sweeping generalizations and legal conclusions about the actions of

"Defendants."  The fact that Plaintiff's fraud claims subject to him to heightened pleading

standards does not excuse lack of compliance with FRCP 8(a).  See McHenry V. Renne, 84

**ORDER ON MTNS TO**
**DISMISS/PARTIAL S-J - 47**

F.3d 1172, 1178 (9th Cir. 1996) (court affirmed dismissal with prejudice for failure to follow Rule 8(a), holding that a "[h]eightened pleading standard is not an invitation to disregard Rule 8's requirement of simplicity, directness and clarity").

Additionally, the Court is mindful that one of the purposes of the requirement that claims sounding in fraud be plead with particularity is to avoid exactly the situation which Plaintiff's multitude of exceedingly lengthy complaints has created: plaintiffs are required to spell out with specificity the "who, what, where, how and when" of their allegations from the onset of their litigation in order to avoid the endless and costly cycle of challenge and clarification that general and conclusory pleadings can invite. The Court will not guess at the legal costs that have been generated in this nearly five year, multi-defendant, multi-claim piece of litigation, but the Court is compelled to point out that multiple parties have paid dearly to defend against claims that Plaintiff has failed to justify when challenged. The Court refuses to put the remaining parties through the expense (and this Court through the agony of sorting through) the next round of 12(b)(6) challenges that a fourth amended complaint would undoubtedly generate.

All claims which have been dismissed on 12(b)(6) grounds are dismissed with prejudice and no leave to amend the complaint further will be granted.

VII. Plaintiff's Motion for Partial Summary Judgment

Plaintiff's motion for partial summary judgment against the Presidio Defendants (Dkt. No. 252) is denied. Plaintiff filed his TAC on October 9, 2007. On November 30, 2007, the defendants' first motion to dismiss was filed, triggering an automatic stay of discovery until all motions to dismiss are ruled on. 15 U.S.C.S. § 78u-4. On December 14, 2007, Plaintiff

**ORDER ON MTNS TO
DISMISS/PARTIAL S-J - 48**

brought a motion to lift the discovery stay (Dkt. No. 210, amended at 213), which the Court denied on February 26, 2008 (Dkt. No. 295).  Despite the fact that no discovery had been conducted and the motions to dismiss had not yet been decided, Mr. Swartz brought a motion for partial summary judgment on January 17, 2008.

Plaintiff supports his motion with scant evidence that is largely inadmissible.  The Court does not understand the timing of Plaintiff's motion and can only conclude that it was brought in an effort to gain tactical advantage by placing information before the Court as it reviewed the defendants' motions to dismiss.  The motion is denied for lack of sufficient evidence.

VIII.  The trial date is stricken

Discovery has yet to be conducted in this matter and the current trial date of May 14, 2008 is clearly unrealistic.  The Court directs the remaining parties to confer and prepare a Joint Status Report ("JSR") on the remaining claims.  That report should comment on the Court's proposal to bifurcate discovery on the statute of limitations and liability issues and seek an accelerated trial on the statute of limitations issue.  Although the parties will not know prior to submitting the JSR whether individual Defendants Pfaff and Larson will remain in the case, the Court does not anticipate that this will significantly impact the process of charting the course of events leading up to trial.

The parties are directed to file their Joint Status Report no later than **May 12, 2008.**

**ORDER ON MTNS TO**
**DISMISS/PARTIAL S-J - 49**

The clerk is directed to provide copies of this order to all counsel of record.

Dated:  May 2, 2008

Marsha J. Pechman
U.S. District Judge

**ORDER ON MTNS TO
DISMISS/PARTIAL S-J - 50**